CATHERINE NEAFSEY, guardian, *vs.* JOSEPHINE CHINCHOLO.

Suffolk.    March 14, 1916. — September 13, 1916.

Present: RUGG, C. J., LORING, DE COURCY, & CROSBY, JJ.

*Compromise Agreement*, Under R. L. c. 148, § 15. *Guardian, Ad litem. Judgment. Limitations, Statute of.*

A compromise agreement under R. L. c. 148, §§ 15, 16, adjusting a controversy between the persons who claim as devisees or legatees under a will and the persons entitled to the estate of the deceased under the statutes regulating the descent and distribution of intestate estates, need not be signed by a guardian *ad litem* appointed to represent future contingent interests.

A decree of the Probate Court confirming under R. L. c. 148, §§ 15, 16, a compromise agreement adjusting a controversy concerning the allowance of a will, if it affected future contingent interests which would arise under the will if admitted to probate and those interests were not represented in the proceedings by a guardian *ad litem* appointed under § 16 to represent them, was made without jurisdiction as affecting such interests and cannot operate to deprive the persons who become entitled to such interests of their rights.

Upon a petition to vacate a decree of the Probate Court confirming under R. L. c. 148, §§ 15, 16, a compromise agreement adjusting a controversy concerning the allowance of a will, where the petitioner alleges and contends that in the proceedings relating to the confirmation of the compromise agreement his future contingent interests were not represented by a guardian *ad litem*, and where the decree sought to be vacated contains the recital, "It appearing that all persons interested who are of full age and legal capacity and the guardian appointed by this court for all minors interested and to represent any future contingent interests which would arise under said will if admitted to probate, have consented to said compromise agreement," this recital is not conclusive against the petitioner and he has a right to prove that it is not true and that in fact his interests were not represented.

R. L. c. 136, § 3, providing that a decree allowing a will shall after two years be final and conclusive in favor of purchasers for value in good faith without notice of any adverse claim, does not apply to a decree confirming a compromise agree-

ment under R. L. c. 148, § 15, under which the rights of the parties are con-
tractual and not testamentary.

*Whether* the authority given by R. L. c. 148, § 15, to confirm a compromise agree-
ment adjusting a controversy concerning the allowance of a will, authorizes
the confirmation of an agreement which has the effect of extinguishing a devise
over after a life estate, here was mentioned as a question on which no opinion
was expressed.

DE COURCY, J.　Peter Gaffney died on October 28, 1907, leaving
an instrument in writing purporting to be his last will and, as his
only heirs at law and next of kin, his granddaughters Eleanor
Fornier and Lorraine Fornier.　The first paragraph of said instru-
ment is as follows:

"First: I give and devise unto my beloved granddaughter
Eleanor Fornier of said Boston, for and during the term of her
natural life, with the use and income thereof, the real estate
together with the buildings thereon now numbered forty (40)
Billerica Street in said Boston, and to my beloved granddaughter
Lorraine Fornier for and during her natural life, with the use and
income thereof, the real estate together with the buildings thereon
now numbered twenty (20) on said Billerica Street; and upon
the death of either of said granddaughters, I give and devise unto
the other or survivor the premises hereby devised to such deceasing
granddaughter, for and during the term of her natural life.　After
the decease of both of my said granddaughters, I give and devise
both of said properties to my then legal heirs at law and their
heirs and assigns forever, as tenants in common."

Objections to the allowance of this instrument were filed by
some of the beneficiaries named therein, and an agreement for
compromise was made and was confirmed by the Probate Court.
The instrument was allowed as the last will of Peter Gaffney, to
be executed in accordance with the compromise, by decrees filed
on April 17, 1908.　By the terms of the compromise agreement
the above first paragraph of the will was stricken out, and the
property therein dealt with (20 and 40 Billerica Street) was devised
to Eleanor and Lorraine Fornier in fee under a newly made residu-
ary devise; and thereby the remainder "after the decease of both
of my said granddaughters, . . . to my then legal heirs at law"
was obliterated.

Eleanor Fornier, who survived her sister Lorraine, died on
November 28, 1909, apparently leaving as her only heir and next

of kin her father Thomas J. Fornier. Margaret Jordan, a grand-niece, John Jordan and William Jordan, grandnephews, thereupon became the persons who would have been the heirs at law of the testator, Peter Gaffney, if he then had died intestate; and the contingent interest devised to them by his will as written became absolute. This petition was brought in 1911 for the revocation of the decree of the Probate Court confirming the compromise agreement and approving the will as that of Peter Gaffney, to be executed in accordance with the terms of that agreement. It is to be noted that the petition should have been brought in the name of the minors, and not in the name of the guardian; but, as no objection was made on that score, we consider the case as if brought in the name of the minors by their guardian.

1. The first contention of the minors (to whom we shall refer as the petitioners) is that the compromise agreement was not signed by any guardian *ad litem* representing their future contingent interest, and that consequently it could not affect their rights in the two parcels of land which were devised to them in the contingency that has happened. As matter of fact the agreement of compromise set forth in the record does not purport to be executed by anyone representing the petitioners, although it is signed by guardians *ad litem* representing the minors Mary McDermott, Eleanor Fornier and Lorraine Fornier. Assuming, then, that it was not signed by a guardian *ad litem* to represent the contingent interest of these petitioners, was the compromise agreement thereby rendered ineffective as against them?

The statute (R. L. c. 148, § 15) which authorizes the compromise of controversies as to wills provides that the parties to such agreement shall be "the persons named as executors, or the administrators with the will annexed, as the case may be, those claiming as devisees or legatees whose interests will in the opinion of the court be affected by the proposed arbitration or compromise, and those claiming the estate as intestate." By § 14, (originally St. 1861, c. 174, § 1,) which dealt with the compromise of controversies between different claimants to the estate in the hands of an executor, administrator, guardian or trustee, it was provided that the parties to the compromise shall be "such executor . . . and all other parties in being who claim an interest in such estate." In *Clarke* v. *Cordis*, 4 Allen, 466, 478, which involved the

construction of this latter statute, it was decided that parties in being having only future contingent interests, need not be parties to the agreement of compromise. The court, speaking by Bigelow, C. J., among other things said, "It was certainly never intended that persons whose interest was remote and contingent and might never become vested, and who had no immediate right of enjoyment, should be called in to take part in the proceedings. Such a construction would defeat the great object of the statute. In many cases it would be impracticable, on account of the number of persons who might be contingently interested, to make them parties." See now St. 1907, c. 447.

It seems to us that in this respect no distinction should be made between the construction of § 14 and § 16; and that in proceedings under §§ 15, 16 the signature of a guardian *ad litem* for the petitioners, who had only a future contingent interest, was not essential to the validity of the compromise agreement. See *Bartlett* v. *Slater*, 182 Mass. 208, 209.

2. It is settled that in this anomalous statutory proceeding to determine a controversy over the allowance of a will, the jurisdiction of the Probate Court is entirely dependent upon the agreement of the parties, acting in strict compliance with the requirements of the statute. *Elder* v. *Adams*, 180 Mass. 303, 306. *Sherman* v. *Warren*, 211 Mass. 288. The rights of the parties after such a settlement are determined by that agreement and the decree confirming it, and not by the will as written; they are contractual and not testamentary rights. *Blount* v. *Wheeler*, 199 Mass. 330, 339. *Brandeis* v. *Atkins*, 204 Mass. 471. If all the parties are of age and no future contingent interests are involved, the parties do not really need the assistance of the court. See *Abbott* v. *Gaskins*, 181 Mass. 501, 506. Where there are such outstanding interests under the will, whose owners cannot execute a binding agreement, manifestly these interests cannot be affected by the agreement, and the court has no jurisdiction to deprive the owner of his property "without his own consent." Art. 10, Declaration of Rights. In order to safeguard such interests and thereby validate a beneficial statute for the settlement of controversies, the Legislature made provision for the appointment of persons to represent these interests in the compromise proceedings. As was said in *Clarke* v. *Cordis*, 4 Allen, 466, 474, 475, "Such contingent

rights and interests are duly protected by the provision which requires the court to appoint some suitable person whose duty it shall be to represent them in all proceedings under the statute, and by the requirement that the court shall adjudge, on due examination and inquiry, that the proposed award or compromise is just and reasonable in its effect on all contingent interests in the estate in controversy. These provisions certainly afford a safe substitute for the assent of parties, in all cases where the uncertain or remote nature of a future right or interest renders it impracticable to obtain the direct concurrence of those who may, on the happening of a future contingency, become entitled to the property." And see *Loring* v. *Hildreth,* 170 Mass. 328, 330.

It follows that the Probate Court, in making a decree confirming the agreement of compromise, was without jurisdiction to deprive these petitioners of their contingent interests in the real estate of the testator, Peter Gaffney, unless they were represented in the proceedings by a guardian *ad litem.* Were they in fact so represented? As we construe the report of the single justice,* he made no finding on this issue. Apparently the parties offered no evidence as to whether or not such guardian *ad litem* was appointed, beyond the facts shown by the record. That record does not disclose any docket entry of the appointment of a guardian to represent future contingent interests; nor is any appointment found among the papers on file in the office of the registrar; there is nothing to show that any such guardian ever filed or made a report, recommending the proposed compromise, on behalf of future contingent interests, and his reasons therefor; and, as already appears, the compromise agreement was not executed by any such representative. Nowhere in the records of the Probate Court, either in the proceedings for the probate and the compromise of the will, or in those dealing with the accounts of the special administrator and of the executor, does a guardian *ad litem* appear to represent the contingent interest of these petitioners. All that does appear on this point, aside from the prayer in the petition for leave to compromise, is the recital in the decree of the Probate Court confirming the compromise agreement, which is as follows: "It appearing that all persons interested who are of full age and legal

* *Braley,* J., who heard the case on an appeal from a decree of the Probate Court and reported it for determination by the full court.

capacity and the guardian appointed by this court for all minors interested and to represent any future contingent interests which would arise under said will if admitted to probate, have consented to said compromise agreement and that said compromise agreement was just and reasonable in relation to the parties in being and in its effects upon any future contingent interests that might arise under said will and that no party objects thereto, . . . ."

In dismissing the present petition, the Probate Court based its action on the presumption in favor of the proceedings on which the above recital was based. See R. L. c. 162, § 2. Where there is no evidence to the contrary, that presumption well may control, especially when an attempt is made to attack a decree collaterally. *McCooey* v. *New York, New Haven, & Hartford Railroad*, 182 Mass. 205. But here the petitioners properly have brought proceedings directly to vacate the decree, so far as their interests are concerned, on the ground that the court had no authority to enter it. See *Clarke* v. *Andover*, 207 Mass. 91. They may prove that the recital in the decree, that a guardian was appointed "for all minors interested and to represent any future contingent interests which would arise under said will," is not true in fact, and that they were not served with process or represented in the proceedings. This jurisdictional fact can and ought to be established by evidence, and not left to a mere presumption, especially now that the estate has been settled, and third persons have dealt with the real estate in good faith in reliance upon the decree. In these circumstances we are of opinion that there should be a specific finding on the question whether in fact a guardian was appointed to represent future contingent interests in the proceedings for leave to compromise the will; and that the case should stand for further hearing. *Rubenstein* v. *Lottow*, 220 Mass. 156, 164.

3. The rights of the parties depend upon the finding on this issue of fact; and we shall not anticipate the legal consequences that may follow the finding. A brief reference, however, should be made to some questions which have been argued and are likely to arise again. If it should appear that the petitioners were not represented by a guardian, and that their contingent rights were not affected by the decree approving the compromise agreement, the statute of limitations, namely, R. L. c. 136, § 3, does not protect the purchaser of the property. That statute makes final

and conclusive, after two years, a decree allowing a will. It does not apply to a decree affirming an agreement of compromise, under which the rights of parties are contractual and not testamentary. And so far as the savings bank, as mortgagee, is affected, its interests probably can be secured by subrogating it to the rights of creditors and others whose claims were paid with the money it lent. See *Newell* v. *Hadley,* 206 Mass. 335, 340, 341, and cases cited.

Even if it shall appear that a guardian *ad litem* to represent future contingent interests was appointed, that is not necessarily conclusive of the rights of the petitioners, who apparently have been deprived of their title without compensation. Other questions are likely to arise, in that event. An important one is whether the attempted compromise agreement was within the scope of R. L. c. 148, § 15. That statute authorized the proper parties to arbitrate or compromise a controversy as to whether the paper presented as the will of Peter Gaffney was, in fact and in law, his will. It is hard to see how it authorizes interested parties to make a new will for the testator, and thereby to extinguish a devise over after a life estate. See *Hastings* v. *Nesmith,* 188 Mass. 190. On this and other issues that have not been argued we express no opinion at this time.

The report must be discharged, and the case stand for further hearing and trial. It is

*So ordered.*

*R. E. Tibbetts,* for the petitioners.
*A. R. Pike,* (*L. H. Dinner* with him,) for the respondent.