WILLIAM A. COPELAND, executor, *vs.* ARTHUR W. WHEELWRIGHT & others.

WILLIAM A. COPELAND, executor, petitioner.

Suffolk. December 3, 1917. — May 23, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Compromise of Controversy Concerning Will.*

Where by the terms of a will offered for probate a trust was created for the benefit of an unmarried son and a married daughter of the testator, and it was provided that upon the death of the son without issue within twenty years after the death of the testator the share of the son should go to his heirs at law, and where at the time of the testator's death the heir presumptive of the son was his sister and' in case of her death his heirs presumptive would be her three minor children, a compromise agreement under R. L. c. 148, §§ 15–18, executed by all the persons designated in those sections, including the daughter of the testator and a guardian *ad litem* representing her three minor children and also representing all future contingent interests of persons unascertained and not in being who' might become interested, which gives the son his share in the trust property outright, thus cutting off all possible benefit which could come to the son's heirs at law under the terms of the will, may be found by the Probate Court under St. 1903, c. 222, to be just and reasonable in its effect upon any future contin-' gent interests that might arise under such will within the meaning of R. L. c. 148, § 17.

Two PETITIONS, filed in the Probate Court for the county of Suffolk on January 16, 1917, by one of the persons named as executors and trustees in the will of John W. Wheelwright, late of Boston, to vacate decrees of that Probate Court made on June 6, 1916, approving a compromise agreement under R. L. c. 148, §§ 15–18, as amended by St. 1903, c. 222, and ordering that the will of John W. Wheelwright be allowed but to be executed according to the terms of such compromise agreement. The Probate Court made decrees dismissing the petitions, and the petitioner appealed.

The cases came on to be heard by *Crosby,* J., who at the request of the parties ordered that the cases be consolidated and reserved them for determination by this court.

The will of John W. Wheelwright was dated June 5, 1899. The material portions of the will were as follows:

"I give, bequeath and devise the entire estate, both real and personal which may belong to me at the time of my decease, to my son Arthur William Wheelwright, Arthur T. Lyman and William A. Copeland and the survivors or survivor of them, to have and to hold to them, their heirs, successors and assigns respectively, but in trust nevertheless for the uses and purposes following, to wit: To hold and manage the same, keeping the real estate in repair and insured against fire, and after paying all necessary charges and expenses of said management, including taxes, to pay the income of all said property quarterly, in three equal shares to my wife, Sarah Wheelwright, my son, Arthur W. Wheelwright, and my daughter, Laura, the wife of George H. Windeler; and in case of the decease of my said son or daughter, leaving issue, then to pay such issue the share thereof which the parent would have been entitled if alive; with the understanding, however, that this trust as to the daughter's share, or third part of the property is to continue during her lifetime; but is to terminate as to the share of my wife Sarah, and son Arthur in twenty years after my decease, or sooner, as to the income payable to either or both of them, in case of their decease before the expiration of said twenty years; and in the event of the decease of them or either of them within twenty years the share of income herein given to the deceased shall go to her or his heirs at law until the expiration of said twenty years, when the principal sum is to be paid over to the heirs at law of such deceased as if it had to come to them under the laws of descent.

"In case of the decease of my daughter Laura during my lifetime, leaving no issue, her share of the income and principal is to go to my wife and son in equal parts, or to the survivor of them; but in case of her death at any time leaving issue, my will is that her share of the income and principal be held and retained by said trustees or their successors, and the survivor of them, for the use and benefit of such issue until the youngest child shall have attained the age of twenty-one years, and then paid over to them in equal shares.

"My will is that if either of the three above-named beneficiaries shall die in my lifetime without issue, the survivors or survivor of them shall take in equal parts the share of such deceased; and if either of them so dying shall leave issue, then that his or her

share shall go to such issue by right of representation, upon their attaining respectively the age of twenty-one years, till which time it shall remain in the hands of said trustees or their successors."

"At the expiration of twenty years from my decease, the trustees abovenamed, or their successors or the survivors of them are to convey to my wife, or her then heirs at law, or to such persons as she may by will appoint, one-third of said trust property, and to my son, Arthur W., or his heirs at law one-third thereof free of said trust; and at the decease of my daughter, Laura, and the arrival at majority of the youngest of any child left by her, they are to convey to her then heirs at law the one-third share or portion of my estate bequeathed in trust to her as aforesaid with any increase thereof while remaining in their possession."

The agreement of compromise was dated May 26, 1916. The manner of its execution is described in the opinion. By the agreement the portions of the will quoted above were stricken out and there were substituted the following provisions:

"All the rest and residue of my estate, real and personal, which may belong to me at the time of my decease, I direct shall be divided into two equal portions, and one of said portions I give to my son Arthur W. Wheelwright for his absolute property in fee, and the other of said portions I give to my son Arthur W. Wheelwright, William A. Copeland and William Endicott, to have and to hold to them, their heirs and assigns, but in trust for the following uses and purposes, to wit: after paying all necessary charges and expenses of the management thereof, including taxes thereon, to pay the net income thereof, quarterly, to my daughter Laura, wife of George H. Windeler, during her life and on her decease leaving issue her surviving not exceeding one-third of the net income thereof shall be paid to her surviving husband during his life if my daughter shall by will so direct and appoint, if such surviving husband was born in my lifetime, and the remainder of said net income, and the whole, after the decease of said husband, or in case no such appointment is made by my daughter, shall be paid quarterly to her children surviving at the time of such payments, the surviving issue of any deceased child to take the parent's share by right of representation.

Twenty years after the decease of said Laura, or sooner if there shall at any time before the expiration of said twenty years be no children of said Laura surviving, said trust shall terminate except as to so much of the said property as may be held in trust for the benefit of a husband of said Laura as herein provided, and the principal shall be paid to the then surviving issue of said Laura taking by right of representation and if there are no issue of said Laura then surviving said principal shall·be paid as said Laura shall by will appoint and in default of issue then surviving and of appointment by will is to be paid to those persons who would be entitled to receive the same had said Laura then died intestate possessed thereof as her own absolute property. If any part of the principal is held for the benefit of a husband of said Laura after the termination of the trust as to the rest of said share held for her benefit as herein provided, the same shall at the decease of such husband be paid to the then surviving issue of said Laura taking by right of representation, and if there are no such issue then surviving shall be paid as said Laura shall by will appoint and in default of issue then surviving and of appointment by will is to be paid to those persons who would be entitled to receive the same had said Laura then died intestate possessed thereof as her own absolute property.

. "Whenever it is necessary or desirable to divide the principal · of the trust estate I give to those persons who shall then be trustees hereunder power to value the property constituting the trust estate and to set off such portions thereof to the persons entitled thereto and for the purposes hereof at such valuations as to them may seem fair and equitable, the judgment of the trustees to be final in the matter."

*F. T. Field,* for the petitioner.

*H. Wheeler & H. S. Davis,* for different respondents.

RUGG, C. J.    These petitions were brought to vacate two decrees of the Probate Court, one authorizing and approving an agreement for compromise of a controversy over the allowance of the will of John W. Wheelwright, and the other allowing his will but directing it to be executed and his estate administered in accordance with the agreement. These petitions were filed after the expiration of the time limited for appeals from the decrees.

The grounds alleged in each petition are that the Probate

Court had "no legal power or authority to enter the same" and that therefore they are "without validity and effect."

The pertinent facts are that John W. Wheelwright died in April, 1916, leaving an instrument purporting to be his last will. He had been an insane person under conservatorship for many years. When his will was presented for allowance, doubts existed as to his testamentary capacity. He left no widow, and his next of kin were an unmarried son aged about fifty-two and a married daughter with three minor children. It is contended that the instrument as drawn was "difficult to construe." Apparently, however, it established a trust for the benefit of the son and daughter, with remainder as to the share of the son in certain contingencies to his heirs at law. His heirs presumptive at that time were his sister and, in the event of her decease, her children. The remainder of the share, of which the sister was entitled to the income during her life, was for the benefit of her issue. The son was appointed one of the executors and was one of the petitioners for the allowance of the will. The daughter appeared to contest the will. It was under these circumstances that the agreement for compromise of contest as to the allowance of the will was made.

It was executed and approved in accordance with the procedure marked out in R. L. c. 148, §§ 15–18 as amended by St. 1903, c. 222. The formal requirements of the statute were strictly observed. A guardian *ad litem* and next friend was appointed to represent ascertained interested minors (being the children of the daughter), and all other persons unascertained and not in being, who might be or become interested. This guardian signed the agreement for compromise in each capacity. It was signed also by all the other parties in interest. The terms of the agreement need not be set forth in detail. It is enough to say that under it the provisions in the will for the benefit of the heirs at law of the son are not to be executed, an absolute interest is to be enjoyed by the son and the terms of the trust for the benefit of the daughter and her issue are to be executed in a manner different from that set forth in the will.

Such an agreement is within the scope of the statute. Manifestly there was ground for a genuine contest respecting the testamentary capacity of the deceased. It was not a vexatious

or frivolous contest. Nor is there anything to indicate that the controversy was feigned or simulated or a mere form without real substance contrived as a mask whereby disappointed legatees might induce a court to approve a distribution of the estate more satisfactory to themselves than was designed by the testator. *Blount* v. *Wheeler*, 199 Mass. 330.

The general purpose and effect of this statute has been stated in numerous cases. Most of them are collected in *Ellis* v. *Hunt*, 228 Mass. 39, where the subject is discussed. Its design was, in cases of real controversy between persons claiming as beneficiaries under a will and the heirs at law of the deceased, to establish a means for settling that controversy and binding future contingent interests, however complicated they may be under the will. The conditions imposed by the statute for such a settlement are that (1) all persons in interest capable of acting for themselves and guardians of those persons in interest ascertained and in being, not competent to act for themselves, shall sign the agreement, (2) a guardian shall be appointed with official responsibility and duty to investigate fully and protect all unascertained and future contingent interests, and (3) the agreement must be found by the court to be just and reasonable in relation to the parties in being and in its effect upon any future contingent interests and bequests to charities, and a decree expressive of that finding must be entered. These are the only limitations upon the scope of such an agreement for compromise in writing specified expressly in the statute. It is a necessary consequence of these broad provisions that the terms of such an agreement for compromise may affect seriously future contingent interests. Persons not under any legal disability have apart from the statute full power to enter into contracts respecting the disposition of property to which they are entitled under wills, and such agreements will be enforced in equity. The statute enables future contingent interests to be affected by agreements in addition to vested interests. Doubtless that was one of its main purposes. It affords the sanction of judicial approval to the form and substance of the agreement. It vests the enforcement of the terms of the agreement in the executor or the administrator with the will annexed.

The agreement in the case at bar was entered into by all the heirs at law and by the legatees and devisees. It was between

adversary parties. It is not necessary to determine whether in such a case the future contingent interest must be represented not only by a guardian but also by the holder of an interest. In passing it may be observed that there may be cases where the present holder would be practically sure not to be the taker. See *Elder v. Adams,* 180 Mass. 303. In the case at bar the daughter of the deceased and her children were the heirs presumptive of the son. They all were parties to the agreement. It was for the interest of these children to support the claims of the heirs of the son, their uncle.

The agreement contains concessions by the legatees under the will sufficient to support its character as a compromise. *Dexter v. Codman,* 148 Mass. 421, 423.

There is nothing in the express terms of the statute which prevents the entire extinguishment by agreement of a future contingent interest in appropriate circumstances. Such an interest may be so remote, and its actual enjoyment so improbable that its retention would appear to be nothing more substantial than a film of mist. The existence of an imaginary or even an extraordinary possibility is not enough to prevent such an agreement from having force when approved as required by the statute. It is conceivable that future contingent interests may be of such tenuous nature that it would be just and reasonable to remove them even so far as concerns such interests rather than to permit them to remain a cloud upon other rights arising in the estate. It is hard to imagine cases where it can be found in judicial proceedings that an agreement is "just and reasonable . . . in its effect upon any future contingent interests that might arise under" a will which absolutely wipes such interests out of existence. Yet it hardly seems possible to say as matter of law that there can be no such cases. The statute does not confer power to make a new will or to render the allowance of a will subject to approval as to the wisdom of its terms by interested parties and the court. That is not its scope. The statute imposes a duty of the most scrupulous care to see that the compromise viewed with reference to the basis for contest, is just and reasonable in all its aspects, including its effect upon future contingent interests. This duty rests upon the guardian and particularly upon the court to see that no such interest be utterly extinguished unless

it is insubstantial. As a practical question, it doubtless was with respect to this point that the cautionary words were used in *Neafsey* v. *Chincholo*, 225 Mass. 12, 18. It is a power which ought to be exercised with the utmost caution. But it cannot be said as matter of law that a case may not exist where the future contingent interest may be so shadowy that it may be said to have no real foundations for substantial expectation and therefore justly and reasonably may be held not worthy of enforcement. There is a remote analogy to the removal of restrictions upon real estate, the enforcement of which would be inequitable. See *Jackson* v. *Stevenson*, 156 Mass. 496; *McArthur* v. *Hood Rubber Co.* 221 Mass. 372; *Riverbank Improvement Co.* v. *Chadwick*, 228 Mass. 242. Of course the evidence upon which the Probate Court acted is not before us and the only question raised is one of jurisdiction. If the Probate Court made a wrong decision on the evidence that is not open to review in this proceeding. *Jones* v. *Jones*, 223 Mass. 540, 543. For these reasons it cannot be said that that court was without jurisdiction to enter these decrees.

The statute may be viewed from another point. It was enacted before the death of John W. Wheelwright and before the execution of his will. The disposition of the property of a person deceased is largely a matter of statute. The statute in question may be treated as a provision to the effect that, where a will creates future contingent interests, the precise extent to which it shall be executed, in cases where all other parties in interest in the estate make an agreement upon that subject, shall depend upon a judicial decree entered upon general principles of justice and reason following a full investigation and report by an independent officer appointed by the court. The general interest of the public that property shall not be entangled by the impalpable and unreal possibility of uncertain and improbable contingencies springing up in the future, might support such an enactment. See, in this connection, *United States* v. *Perkins*, 163 U. S. 625; *Matter of Bergdorf*, 206 N. Y. 309; *State* v. *Hamlin*, 86 Maine, 495, 505.

The statute as thus interpreted is constitutional. That was decided as to § 14 of this same chapter 148 after great consideration in *Clarke* v. *Cordis*, 4 Allen, 466. The principles there expounded are decisive of the present case. They need not be repeated. The reasoning of that case is conclusive of this. See, in

this connection, *Loring* v. *Hildreth,* 170 Mass. 328, 330; *Sewall* v. *Roberts,* 115 Mass. 262; *Tyler* v. *Court of Registration,* 175 Mass. 71; *Adams* v. *Adams,* 211 Mass. 198.

*Clarke* v. *Cordis,* 4 Allen, 466, was decided and St. 1864, c. 173 (the first form of the sections of the statute now under consideration), was enacted before the adoption of the Fourteenth Amendment to the Federal Constitution. The grounds upon which that decision rests, however, seem to us to demonstrate that no guaranty of that amendment is infringed by the present statute. Numerous decisions of the Supreme Court of the United States appear to us to go quite as far as is required to uphold this statute. *Blinn* v. *Nelson,* 222 U. S. 1, 7. *American Land Co.* v. *Zeiss,* 219 U. S. 47. *Christianson* v. *King County,* 239 U. S. 356, 373.

*Decrees dismissing petitions affirmed.*