ALEXANDER MANGANIELLO & others *vs.* RUTH DANFORTH CAGGIANO & others.

Barnstable.   December 2, 1958. — February 9, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Will,* Compromise.   *Contract,* Parties, Compromise of will.   *Executor and Administrator,* Compromise agreement.

Findings by a Probate Court judge, that the parties to an agreement of compromise of a controversy respecting probate of the will of a testator whose estate had shrunk in value considerably after his death had conferred in an effort to reach a settlement and that without misrepresentation by anyone each party had acted upon his own opinion of the value of the estate in agreeing to the compromise, warranted a conclusion that the agreement was not entered into by reason of accident, mutual mistake, or error.   [544–545]

The fact that two of the legatees under a will were not formal parties to an agreement for compromise of a controversy with the testator's widow respecting the will was not ground for revocation of a decree authorizing a compromise in accordance with the agreement under G. L. c. 204, § 15, where it appeared that the two legatees had been notified of the proceedings for probate of the will and for authority to compromise but had not appeared therein, that their interests seemingly were not adversely affected by the compromise, and that those seeking the revocation of the decree were other persons who were parties to the compromise agreement and who had previously consented to approval thereof.   [546]

PETITION, filed in the Probate Court for the county of Barnstable on January 10, 1956.

The case was heard by *Davis,* J.

*Angelo Morello,* for the petitioners.

*Paul G. Archambault,* for the respondent Ruth Danforth Caggiano, submitted a brief.

RONAN, J.   This is an appeal from a decree of the Probate Court of Barnstable County entered on November 23, 1956, dismissing a petition seeking to vacate and set aside a decree dated August 23, 1954, which authorized the proponent of

the will of Aurelio J. Caggiano to adjust in accordance with an agreement of compromise a controversy then existing between the proponent and the respondent Ruth Danforth Caggiano who claimed to be the widow of the testator (and who is hereinafter called the widow). We have no transcript of the evidence which resulted in the decree of November 23, 1956, but we have the report of the material facts found by the judge. These findings must be accepted as true unless inconsistent with each other or with the ultimate conclusion reached by the judge. *Kennedy* v. *Shain*, 288 Mass. 458, 459. *Estey* v. *Gardner*, 291 Mass. 303, 306. *Turner* v. *Morson*, 316 Mass. 678, 681. *Sturnick* v. *Watson*, 336 Mass. 139, 143.

The judge's findings may be summarized as follows: The testator died on February 7, 1953. His heirs at law and next of kin were set forth in a petition for probate and purported to be brothers, nephews, nieces, and a sister. The list made no mention of any surviving widow, if there was one, nor was there anything to indicate that the testator left any issue. The widow seasonably filed an appearance in opposition to the allowance of the will and also a petition to be included in the list of heirs and next of kin. The proponent moved to strike out her appearance. Subsequently he filed a petition for authority to adjust the controversy with her. He also filed the agreement for compromise. After a hearing, the agreement was approved, ratified and confirmed by the decree entered on August 23, 1954. On the same day the petition of the widow to be added to the list of heirs at law and next of kin in the petition for the probate of the will was allowed. The will was admitted to probate on the same day by a decree directing that the estate be administered "in accordance with the terms of said will and said agreement of compromise."

Under the provisions of the compromise the widow was to be given $6,000 in lieu of her statutory share although, as the statute then stood, G. L. c. 190, § 1, as amended by St. 1945, c. 238, § 1, she was entitled to $10,000 and one half of the remaining realty and one half of the remaining personalty. See now St. 1956, c. 316, § 1. The payment of the

$6,000 was to take precedence over all other legacies and was to be made on or before October 31, 1954. She was also to be recognized as a creditor of the estate in the amount of a note of $5,500 together with interest of $500 which was to be paid by the executor within a year. The widow was also given a used automobile and household goods which were then the subject of a pending bill in equity.

The will itself bequeathed and devised to Cesare Caggiano, the testator's brother and a resident of Italy, all his property located in Italy and the sum of $3,000. He bequeathed to Antonio Caggiano, a nephew, and also a resident of Italy, a similar sum. The agreement of compromise provided that these two legacies "shall be paid in full before paying the other legacies, aside from the legacy to the widow, which will be paid in full." These two legatees were not represented upon allowance of the will and were not formal parties to the agreement of compromise. They entered their appearance by counsel on May 10, 1956, in reference to the petition in equity to vacate the decree and set aside the agreement of compromise, and counsel on September 6, 1956, entered a written request for the appointment of a stenographer for the hearing on the vacation of the decree allowing the agreement of compromise. On August 30, 1956, the Italian legatees also filed a petition to intervene. They were apparently named as respondents in the petition to set aside the decree approving the agreement of compromise in an effort to show that, the agreement not being signed by all the parties in interest, the Probate Court had no jurisdiction to approve it.

Enough appears from the findings of the judge to indicate that the petitioners were not induced to enter into the agreement of compromise through accident, mutual mistake and error, as alleged by them. The judge found that the parties conferred before the decree of August 23, 1954, in an effort to reach a settlement and that the value of the estate was discussed. There had been a considerable shrinkage of the assets in the estate by that time by reason of the foreclosure of a mortgage and the repossession by a conditional vendor

of equipment of a restaurant which the testator had successfully operated during his lifetime. The judge found that there was no misrepresentation made by one side to the other to induce the compromise, but that each acted upon his own opinion of value, and that the agreement was not the result of accident, mistake or error, and entered a decree refusing to set aside the agreement of compromise.

There is nothing here to show that any of the parties were incapable of contracting in their own interests or represented interests not in being, or that their shares in the estate were uncertain or contingent. There was no need for them to resort to the Probate Court under G. L. c. 204, § 15, to ratify or approve their agreement of compromise, *Baxter* v. *Treasurer & Receiver Gen.* 209 Mass. 459, 463, *Renwick* v. *Macomber*, 225 Mass. 380, 385, *Ellis* v. *Hunt*, 228 Mass. 39, 44, *Mulligan* v. *McDonagh*, 307 Mass. 464, 467, *MacDonald* v. *Gough*, 327 Mass. 739, 742; but they apparently desired to secure the advantages that would result from such action on the part of the court. See *Baxter* v. *Treasurer & Receiver Gen.* 209 Mass. 459, 461–462. Where approval of the court is sought, the statute must be strictly complied with, *Elder* v. *Adams*, 180 Mass. 303, 306, and it has been held that the court has no jurisdiction to authorize a compromise without the assent of the necessary parties. *Ellis* v. *Hunt*, 228 Mass. 39. See *Sherman* v. *Warren*, 211 Mass. 288. Where, however, all interested parties are present or represented, the decree approving an agreement of compromise among them is valid and enforceable. See *Bartlett* v. *Slater*, 182 Mass. 208; *Duffy* v. *Hogan*, 203 Mass. 397; *Brandeis* v. *Atkins*, 204 Mass. 471; *Parker* v. *New England Trust Co.* 215 Mass. 226, 229; *Neafsey* v. *Chincholo*, 225 Mass. 12, 16; *Copeland* v. *Wheelwright*, 230 Mass. 131; *Woodard* v. *Snow*, 233 Mass. 267; *Forbes* v. *Snow*, 245 Mass. 85; *Ward* v. *Blake*, 247 Mass. 430, 433; *Lomasney* v. *Prendible*, 299 Mass. 273; *Newburyport Soc. for Relief of Aged Women* v. *President & Fellows of Harvard College*, 310 Mass. 438, 442; *Mac-Donald* v. *Gough*, 326 Mass. 93; *MacDonald* v. *Gough*, 327

Mass. 739; 42 A. L. R. 2d 1372–1374. Parties who have an interest in the estate and who receive seasonable notice of different proceedings in probate should appear either personally or through counsel to protect their interests. *Mulligan* v. *McDonagh,* 307 Mass. 464. Here it has not been questioned that notice was given to the two Italian beneficiaries to appear in opposition to the allowance of the will and that they had seasonable notice to oppose the allowance of the agreement of compromise. So far as appears the compromise did not affect their interests in the estate, when made, having in mind what the result would have been had the widow elected to waive the will and accept her statutory share of the estate rather than enter into the agreement of compromise. They should not be allowed to wait more than two years and then, finding that the estate had diminished in assets, to seek to set the compromise aside. We are of the opinion that the instant case is even stronger for the respondents than was *Mulligan* v. *McDonagh,* cited above. In the *Mulligan* case a petitioner was held not to have been a necessary party within the meaning of G. L. c. 204, § 15, to an agreement of compromise entered into by all of the other interested parties where it appeared that she had been given notice of the probate of a will excluding her and did not appear seasonably to contest it, but did appear later to oppose the approval of the agreement. Furthermore, in the instant case it is not the absent legatees who are contesting the agreement of compromise, but the very parties who had previously requested the Probate Court to allow and approve it.

*Decree affirmed.*