Fishman, Kenneth J., J.
The plaintiff, Jeffeiy Fraser (“Fraser”), brought this suit against the defendant, Pegasystems, Inc. (“Pegasystems”), alleging breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. Specifically, the plaintiff contends that he is entitled to damages because the defendant failed to pay him commission and bonuses due to him under his sales incentive plan. Pegasystems moves for summary judgment. For the reasons detailed herein, Pegasystems’ motion is ALLOWED.

BACKGROUND

The undisputed and disputed facts viewed in the light most favorable to the non-moving party, as revealed by the summary judgment record, are as follows.
Pegasystems is based in Cambridge, Massachusetts, and sells business software. Fraser joined Pegasystems on November 5, 2001. He was hired as a sales executive on an at-will basis. Fraser’s yearly base salary was $85,000.00. In addition, when Fraser reached a predetermined sales quota he earned commission and bonuses under Pegasystems’ annual sales incentive plan.
In 2002, Fraser’s individual commission plan, which set out his specific commission and bonus opportunities, stated that his sales quota was $2.5 million. The sales incentive plan covered sales made between January 1, 2002 and December 31, 2002. Fraser understood that the terms and conditions of the plan were subject to change at any time with five days written notice, that it could change from year to year, and that he had no control over the assignment or change of accounts that might affect his commission.
In December of 2001, Pegasystems assigned the JP Morgan Chase (“JPMC”) account to Fraser. As the sales manager of the account Fraser was charged with renewing an existing license for Pegasystems software and expanding the scope of the JPMC contract. By May 2002, the complexity of the JPMC account was such that it required the involvement of senior management. As a result, members of senior management took charge of the account and Fraser’s role was to provide any necessary support to management. Fraser continued to be assigned to and work on the JPMC account until it closed on March 31, 2003.
*405 During the time that the JPMC deal was pending, Pegasystems contemplated changing its sales incentive plan from a standard quota system to an opportunity-based system. Under a standard quota system, all sales representatives have the same target quotas, while an opportunity plan assigns individual quotas based upon targeted accounts and anticipated sales. Pegasystems used a standard quota system for the 2002 year, and changed to an opportunity-based system for the 2003 year.
As of February 2003, Fraser had not received his 2003 individual commission plan. As other sales representatives began to receive their plans, Fraser learned that the 2003 sales incentive plan would be based on a different model than the 2002 plan. He began to worry that his 2003 commission plan quota would be higher than his $2.5 million quota for 2002 and would affect his commission on the JPMC deal.
In late February or early March of 2003, Fraser meet Joseph Frisca, Pegasystems’ executive vice-president and general manager, in the elevator. Fraser asked Frisca if there was any reason for him to believe that his commission plan would change in 2003 and if it would affect his commission on the JPMC account. Frisca told him that it was a good question, and that there was a new commission plan that had not been worked out yet and he should not worry about it. Over the next few weeks, Fraser frequently asked Regina MacDonald, his direct supervisor, when he was going to receive his commission plan and what to expect. She would tell him that they were still trying to figure out how to pay him for the JPMC deal, but it would not change much. Eventually, she indicated to Fraser that his quota might be raised significantly. After Fraser learned this, he reiterated his concern regarding a raised quota to Frisca, who told him that he did not want him to worry about it.
On March 14, 2003, Pegasystems presented Fraser with a commission plan for 2003 with a $6.5 million quota. In raising Fraser’s quota from $2.5 million to $6.5 million, Pegasystems’ upper management considered the amount of work that Fraser did on the JPMC project and the prospect that the JPMC contract would close in 2003. During the time that they were adjusting Fraser’s quota, upper management was aware that Fraser was expecting a quota similar to his 2002 quota. Although Fraser expressed his displeasure with the 2003 plan and believed that his $2.5 million quota could not be changed once the JPMC deal was in flight, he signed his 2003 individual commission plan. The JPMC deal closed on March 31, 2003. The plaintiff was paid in full the commissions and bonus owed him under the 2003 plan. He resigned on July 31, 2003.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cctssesso v. Commissioner of Correction, 390 Mass. 419, 422 (1982); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with and allege specific facts establishing the existence of a genuine issue for trial. Pedersen, 404 Mass, at 17. The opposing party cannot rest on mere assertions of disputed facts to defeat the motion. Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
A. Breach of Contract
The plaintiff alleges that Pegasystems breached an implied contract by failing to pay him bonuses and commission for the JPMC deal based upon his 2002 incentive plan. In order for this Court to find an implied contract (1) Fraser must have furnished services, (2) to Pegasystems, (3) with the reasonable expectation of being paid, and that Pegasystems, (4) having reason to believe that Fraser was acting with such expectation, (5) permitted him to act without objection. Rauseo v. Int’l Bulfinch, LLC, 61 Mass.App.Ct. 1120 (2004). The facts in this case do not support such a finding.
While it is undisputed that Pegasystems continued to let Fraser work on the JPMC account, knowing that Fraser expected to be paid commissions in accordance with his 2002 incentive plan, it was unreasonable for Fraser to have this expectation. Although both Frisca and MacDonald told Fraser not to worry about his quota, neither promised Fraser that his commission plan would remain the same. Moreover, Frisca told Fraser that the company was trying to figure out his quota, and MacDonald ultimately informed him that there was the chance his quota would significantly increase.[1]
Even if this Court were to find that management had misled Fraser into believing that his 2003 would have the same quota that his 2002 contract did, that finding would not affect the undisputed evidence that Fraser knew that, under the terms of his commission plan, quotas could change from year to year and that the commission plan could change at anytime with five days written notice. In addition, Fraser knew that, at any time, an account could be taken from him.[2]
*406 Fraser also argues that he is entitled to have his commission for the JPMC deal calculated under his 2002 plan because, although the deal closed in 2003, it “took flight” in 2002. Fraser, however, cannot point to any contract provision or past practice that would support a reasonable expectation that he would be paid under the terms that were applicable when the account opened rather than when the deal closed. Moreover, and perhaps most compelling, when Fraser signed his 2003 incentive plan, he agreed to the quota and all of the terms of the plan. Accordingly, because Fraser could have no reasonable expectation of being paid under the terms of his 2002 plan, this Court finds there was no implied contract between the parties.

B. Implied Covenant of Good Faith and Fair Dealing

Fraser claims that Pegasystems breached the implied covenant of good faith and fair dealing when it changed the terms of his incentive plan quota from $2.5 million to $6.5 million. While traditionally an employer had a right to terminate an at-will employee without cause, the Supreme Judicial Court, in Fortune v. National Cash Register Co., 373 Mass. 96, 102 (1977), recognized an exception to this right, holding that an “employer’s decision to terminate its at-will employee should be made in good faith.” A breach of an implied covenant of good faith arises when an at-will employee has been discharged in bad faith.
The plaintiff argues that recovery for bad faith employment actions should extend beyond a situation where an employee had been terminated.[3] However, the Supreme Judicial Court has stated that “(o]ur cases have held employers liable for breach of the implied covenant of good faith and fair dealing only when they have terminated an employee.” McCone v. New England Telephone, 393 Mass. 231, 233 n. 7 (1984). Because Fraser voluntarily left his position with Pegasystems, there can be no viable claim for bad faith termination.
C. Unjust Enrichment
Finally, Fraser argues that he is entitled to damages under the doctrine of quantum meruit on the theory of unjust enrichment. Unjust enrichment provides an equitable remedy by requiring a person who has been unjustly enriched at the expense of another to make restitution to the other. Fox v. F.J. Gattozzi Corp., 41 Mass.App.Ct. 582, 589 (1996). Fraser alleges that Pegasystems was unjustly enriched because it made a substantial financial gain when it increased his quota for the 2003 year. Specifically, by paying Fraser commission and bonuses under a $6.5 million quota, rather than a $2.5 million quota, Pegasystems retained $338,817.87 that it would otherwise have paid to Fraser. However, because the summary judgment record conclusively establishes that the JPMC deal was governed by the terms of Fraser’s 2003 incentive plan, and not the 2002 terms, Pegasystems has paid Fraser all the money owed to him, and, therefore, the plaintiffs claim for unjust enrichment must fail.

ORDER

Based on the foregoing, it is hereby ORDERED that the defendant Pegasystems’ motion for summary judgment is ALLOWED.

 Fraser also contends that MacDonald told him that she was given an original incentive plan for him, but it was called back to make changes based upon the closing of the JPMC deal. It would not be reasonable for the plaintiff to rely on the provisions in the original incentive plan, because these terms were never officially offered to him.

Despite the fact that the JPMC account became so complicated that upper management needed to step in and head the account, Pegasystems did not take the account away from Fraser, even as his role changed from lead sales representative to a more supporting role.

The plaintiff relies on several cases to support his argument that the implied covenant of good faith and fair dealing should be extended beyond situations that involve termination. However, each of the cases cited involved terminated plaintiffs. See Devlin v. WSI Corp., 833 F.Sup. 69 (D.Mass. 1993); Williams v. B&K Medical Systems, Inc., 49 Mass.App.Ct. 563 (2000); Malloy v. Goldwater Seafood Corp., 338 Mass. 544 (1959).