REBECCA BUDIN & others *vs.* MAURICE J. LEVY, executor, & others.

Franklin.   September 29, 1961, February 7, 1962. — February 19, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Executor and Administrator,* Status in proceedings involving estate. *Probate Court,* Appeal. *Will,* Compromise. *Contract,* Compromise of will. *Trust,* Termination.

Under G. L. c. 215, § 9, as amended, the executor of a will made a respondent in a proceeding in the Probate Court was entitled to appeal from a decree ordering distribution of the testator's estate in accordance with a compromise agreement between beneficiaries under the will. [648]

Where all persons given beneficial interests in a trust of the residue of a decedent's estate, both under the terms of the trust originally provided in his allowed will, and under materially different terms substituted by a codicil, also allowed but alleged to be invalid in a pending petition to revoke its allowance, were in being and legally competent and made a

compromise agreement providing for immediate distribution of the residue free and clear of trust to some of the beneficiaries, a decree of the Probate Court ordering distribution of the residue in accordance with the compromise agreement was supported by a finding of the judge that "the agreement of compromise represents a just and reasonable settlement of a genuine controversy over the validity of the . . . codicil and the allowance thereof" and was affirmed on an appeal without a report of the evidence.  [647, 648–649]

It is not essential to the validity of a compromise of will agreement that no material purpose of the testator be defeated by the agreement. [649]

PETITION, filed in the Probate Court for the county of Franklin on February 12, 1960.

The case was heard by *Sullivan, J.*

*William H. Welch,* (*Burton Winer* with him,) for the appellant Levy.

*Henry Alpern,* (*Harvey B. Kramer & Barbara B. Alpern* with him,) for the petitioners.

*Edward J. McCormack, Jr.,* Attorney General, *& Marion Miller Fremont-Smith,* Assistant Attorney General, submitted briefs.

WILKINS, C.J.  This petition in the Probate Court for Franklin County is to obtain a decree ordering the distribution of the estate of David Rosen, late of Greenfield, free of trust in accordance with the provisions of a compromise agreement dated January 27, 1960.  The petitioners are three individuals of Tel Aviv, Israel, namely, Rebecca Budin, sister of the testator, and her children, Samuel Budin and Chasia Neeman; and First Hebrew Congregation of Greenfield.  The respondents are Maurice J. Levy, executor, and Maurice J. Levy and Franklin County Trust Company (a Massachusetts corporation), who were named in the will as trustees, but who have never qualified.  A guardian ad litem was appointed to represent persons not ascertained or not in being who were, or might become, interested, and he filed a report in which he stated that there were no such persons and assented to the compromise. From a decree ordering distribution, the respondent Levy appealed as ''executor and trustee.''  The trust company

did not object to the allowance of the petition, and agreed to abide by the decision of the Probate Court. The judge filed a report of the material facts found by him. G. L. c. 215, § 11 (as amended through St. 1947, c. 365, § 3). The evidence is not reported.

The will and a codicil of David Rosen were allowed, and the executor appointed, on November 18, 1958. The testator died on October 27, 1958, leaving no widow and his sister Rebecca as his only heir at law. On August 10, 1959, Rebecca, who came to this country several months after the allowance of the will, filed a petition for the revocation of the decree of November 18, 1958, in so far as it concerned the codicil. That petition has never been heard. The codicil, therefore, is, strictly speaking, part of the will and not an "alleged codicil" as charged by the petitioners or as described by the judge. The present petition for distribution was filed on February 12, 1960.

Paragraph 11 of the will, dated October 11, 1954, left the residue to the respondents Levy and the trust company in trust to pay the income to Rebecca for life with power to expend principal for her support in the event that the income should be insufficient for that purpose. Upon her death whatever should remain was to be paid to her children.

Paragraph 7 of the codicil, dated June 30, 1957, superseded paragraph 11 of the will, gave Rebecca the income for life, eliminated the authority to pay principal, and made new provisions to take effect upon her death to pay the income to the children for life and thereafter to pay the principal to the synagogue.[1]

Certain gifts were influenced by the testator's desire to have his sister come to this country. By paragraph 2 of the will he gave his house and its contents in Greenfield to her "should she actually come to this Country before my death or within a year after my death." In the codicil he

[1] The residue was left to the "trustees, to manage, handle, invest and reinvest the same and to pay the income thereof to my sister, Rebecca Budin, for the term of her natural life, and upon her death, the income is to be paid in equal shares among her children and the survivors thereof, until they shall have deceased and upon their death, the corpus of this trust fund is to be paid to the First Hebrew Congregation of Greenfield, to be used by said Congregation for the best interest of the Synagogue."

introduced certain changed dispositions with the words, "It seems to me very impractical to think that my sister will ever be coming to this Country and so I wish to revoke paragraph 2 of my will dated October 11, 1954 and in place thereof I make the following provisions . . . ."

Findings of the judge are that Rebecca, who was born in 1902, came to the United States several months after the allowance of the will. The immediate cause of the testator's death was "recurrent cerebral thrombosis due to arteriosclerosis," and he had "suffered from severe Parkinson's disease for over eight years." Rebecca filed the petition to revoke in the belief that she had a meritorious cause of action. The grounds of the petition were that the deceased lacked testamentary capacity at the time of the execution of the codicil; that its execution was procured through undue influence; that the codicil was not executed as required by law; that the codicil was executed in the mistaken belief that Rebecca would not come to the United States; and that she was fraudulently led and induced to fail to enter an appearance to contest its allowance. "According to undisputed medical evidence . . . [she] is no longer capable of bearing a child." Her two children are of full age and are not under any legal disability.

The parties to the agreement of compromise are Rebecca, her two children, and the Congregation. The agreement provides that all bequests and devises in the will and codicil shall, with the exception of that of the residue, be carried out; that the residuary estate shall be distributed free and clear of trusts; and that Rebecca shall receive $190,000, the Congregation $73,000, and Rebecca any excess.

We read in the judge's report "that the agreement of compromise represents a just and reasonable settlement of a genuine controversy over the validity of the alleged codicil and the allowance thereof. No material purpose of the testator is defeated by such agreement." The petitioners "are the only persons who are or may become beneficially interested in the disposition of the residuary estate."

The case was tried below and came to this court and was here argued without notice to the Attorney General, who

represents the public in a charitable trust.   G. L. (Ter. Ed.)
c. 12, § 8.   *Springfield Safe Deposit & Trust Co.* v. *Stoop,*
326 Mass. 363, 366.   By our direction he was made a party.
See G. L. c. 12, § 8G, inserted by St. 1954, c. 529, § 1.
The Attorney General has now filed a brief submitting his
rights for a determination of the merits of the compromise
agreement.

The petitioners contend that the respondent executor is
not a person aggrieved by the decree of distribution, and so
is not entitled to appeal under G. L. c. 215, § 9, as amended.
We do not consider his standing as a named trustee who has
not qualified (see *Lovejoy* v. *Bucknam,* 299 Mass. 446, 450),
although we observe that the petition for distribution names
the two trustees as respondents.   He is, in any event, en-
titled to appeal as executor, in which capacity also he has
been made a respondent.   An executor has a duty to see
that what he reasonably believes to be his testator's intent
is carried out, and, should his judgment be that a decree in
the Probate Court did injustice, he would have standing to
seek appellate review.   See *Doane* v. *Bigelow,* 293 Mass.
406, 409, which distinguishes cases such as *Dockray* v.
*O'Leary,* 286 Mass. 589, where an executor brought a peti-
tion for instructions.[1]   Compare *Ripley* v. *Brown,* 218 Mass.
33, 35; *McKay* v. *Audubon Soc. Inc.* 318 Mass. 482, 484–485;
*Beede* v. *Old Colony Trust Co.* 321 Mass. 115, 121; *Phelan* v.
*McCabe, ante,* 585, 587–588.

No contention is made that the rules relating to com-
promise of a will are not equally applicable in the present
situation where a petition to revoke has been filed and is
awaiting action by the Probate Court.

The case at bar is concluded by the facts found by the
judge.   No evidence is reported, and, although the respond-
ent's brief seems to suggest that evidence of a substantial
nature was lacking, its absence does not appear from the
record.   The finding ''that the agreement of compromise
represents a just and reasonable settlement of a genuine

---

[1] An increasing number of cases elsewhere even allow an appeal by an execu-
tor who has sought instructions.   *Howard Sav. Inst.* v. *Peep,* 34 N. J. 494, 499.
*In re Smith's Will,* 9 App. Div. 2d (N. Y.) 583.   *Estate of Satow,* 240 Wis.
622, 625 (administrator with the will annexed).

controversy over the validity of the alleged codicil and the allowance thereof'' is sufficient to support the decree. *Turner* v. *Morson,* 316 Mass. 678, 681. *Abrain* v. *Pereira,* 336 Mass. 460, 461–462. *Reed* v. *Reed,* 340 Mass. 321, 322. While the judge's meager report leaves the matter in doubt as to the ground or grounds of contest as to which he found that there was a genuine controversy, the finding itself is not altogether nugatory.

Before a will is allowed, where all the interested parties are of legal competence and no unrepresented interests would be affected, the parties may settle their differences by a compromise without the aid of G. L. (Ter. Ed.) c. 204, § 15. *Blount* v. *Wheeler,* 199 Mass. 330, 335–337. *Parker* v. *New England Trust Co.* 215 Mass. 226, 229. *Manganiello* v. *Caggiano,* 338 Mass. 542, 545. Such an agreement of compromise as to interests which might be received from an estate is apart from the provisions of the will. Rights under the agreement are wholly contractual and in no sense testamentary. *Ellis* v. *Hunt,* 228 Mass. 39, 43–44. *MacDonald* v. *Gough,* 327 Mass. 739, 742. Indeed, the result may be quite contrary to the testator's intent. This means that before the allowance of a will a trust may be changed or even eliminated by a compromise otherwise valid and approved by the court. *Copeland* v. *Wheelwright,* 230 Mass. 131. *National Shawmut Bank* v. *Fitzpatrick,* 256 Mass. 125, 136–137. *Matter of O'Keeffe,* 167 Misc. (N. Y.) 148. Scott, Trusts (2d ed.) § 337.6.

We feel that we should make some reference to the judge's statement that no material purpose of the testator is defeated by the compromise agreement. From what we have said it is apparent that this statement was not necessary to uphold that agreement.

The respondent relies upon *Allen* v. *First Natl. Bank & Trust Co.* 319 Mass. 693. It is a sufficient distinction of that case for present purposes to indicate that no compromise agreement was there concerned and the only question related to the power of the beneficiary to require termination of the trust.

*Decree affirmed.*