Burnes, Nonnie S., J.
The defendants, Rosanne Murphy, Estate of Karen Dobkin, Edward M. Stem, and Beth L. Aarons, move for summary judgment on all claims in the plaintiffs, Suzanne Macht, complaint.
For the reasons set forth in this opinion, the defendants’ motions for summary judgment are ALLOWED.

BACKGROUND

In 1984 Karen Dobkin, now deceased, executed a Will wherein she devised her entire estate to her parents and her sister Rosanne Murphy (“1984 Will”). The 1984 Will was properly executed. In the winter of 2002, Dobkin was diagnosed with cancer, and started to reconsider her estate plan. Initially, Dobkin consulted Marjorie Berkowitz, the wife of the attorney who had drafted the 1984 Will, and she referred Dobkin to attorney Edward M. Stem.
In June of 2003, Dobkin met with attorney Stern to discuss making changes to her estate. Beth L. Aarons, an attorney who occupied the same office complex as attorney Stem, and who had estate planning experience, was also present at the meeting at Stern’s request. At the meeting, Dobkin informed both attorneys that she wanted to revoke the 1984 Will and leave the majority of her estate to charities and friends. In response, Stems prompted Dobkin to write a specific list of the charities that she wanted to benefit from her estate, and to contact him when it was completed so that they could effectuate the changes she wanted. In the weeks following the meeting, Stems made efforts to contact Dobkin regarding the list. At each juncture, Dobkin replied that she had not yet completed the list. In July of2003, Stems informed Dobkin that he would be leaving on vacation through the month of August, and that she should direct any pressing issues regarding the changes to her estate to attorney Aarons.
Shortly after Dobkin left for his vacation in early August, Dobkin fell ill due to her cancer. On August 4th and 5th, Dobkin attempted to contact attorney Aarons to request that a new will be drafted. On August 6, 2003, Carol Rissman, a close friend of Dobkin, found Dobkin in the last stages of her illness. On August 6, 2003, Rissman contacted attorney Aar-ons, allegedly at Dobkin’s request, and directed her to draft a will leaving the majority of the estate to the plaintiff, Suzanne Macht (“2003 unexecuted will”).
Aarons drafted the will, and sent it by courier to Dobkin’s house with a cover letter instructing Dobkin on the necessary steps to properly execute the instrument.[2] When the will arrived, just hours after the telephone call, Dobkin was in the final stages of her illness, was medicated, lacked consciousness, and was uncommunicative. Dobkin died in the early evening of August 6, 2003. The new will was never executed; the 1984 Will was never revoked.
Shortly after Dobkin’s death, Macht began acting as a temporary self-appointed executrix and began collecting all of Dobkin’s assets with no objection from Murphy, Dobkin’s sister. According to Macht, she had a number of conversations with Murphy where she told Murphy about Dobkin’s wishes prior to her death, and particularly about the desires she expressed in the 2003 unexecuted Will. According to Macht, Murphy indicated that Dobkin’s last wishes should be honored. Shortly thereafter Murphy learned from attorney Stem that the 1984 Will was in existence, and that it was the only properly executed Will left by Dobkin. Murphy then requested that attorneys Stem and Aarons represent her in probating the 1984 Will. Attorneys Stem and Aarons agreed, and the 1984 Will was admitted to probate, with Murphy appointed as executor.
After discovering that Murphy had probated the 1984 Will, Macht filed this present action seeking enforcement of the oral agreement that she alleges she reached with Murphy to have Dobkin’s final wishes, as expressed in the unsigned and unexecuted 2003 Will, honored, and to be appointed as the executor of Dobkin’s estate. In her complaint, Macht also brings claims against attorneys Aarons and Stern, premised on their failure to ensure that the 2003 Will was properly executed, and their failure to carry out Dobkin’s intent that Macht be the principal beneficiary of her estate. Macht posits herself as an intended third-party beneficiary of the engagement between Dobkin and attorneys Stern and Aarons, and seeks to derive from that status her right to bring breach of fiduciary duty and malpractice claims against the attorneys for their alleged failures regarding the 2003 unexecuted Will. Macht ultimately seeks damages, appointment as the executor of Dobkin’s estate, and declarations to the effect that, (1) the unexecuted Will is valid, (2) that the 1984 Will was repudiated and revoked, and (3) that Murphy entered into an enforceable agreement to accede to the terms of the unexe-cuted 2003 Will.

DISCUSSION

This Court grants summary judgment where there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant *320 issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson, 404 Mass. at 17.
A. Macht’s Claims Against Murphy and the Estate of Karen Dobkin
In her complaint, Macht alleges that Murphy entered into a binding and enforceable agreement with her that the disposition of Dobkin’s property would be accomplished in conformity with Dobkin’s wishes expressed in her 2003 unexecuted Will rather than the executed 1984 Will.[3] The genesis of Macht’s claims against the Estate and Murphy are that Murphy repudiated that agreement, and in turn, deprived Macht of the distribution of the estate that she believes she should have received. In order to succeed on her claim, Macht must establish that she and Murphy entered into a valid and enforceable agreement to compromise the 1984 Will, before that Will was allowed, in one of two ways, (1) by entering into a court-approved compromise, pursuant to G.L.c. 204, §15,[4] or (2) by entering into a mutual agreement at common law. Price v. Price, 348 Mass. 663 (1965); Budin v. Levy, 343 Mass. 644, 649 (1962); MacDonald v. Gough, 327 Mass. 739 (1951). It is undisputed in the summary judgment record that Macht and Murphy never entered into a court-approved compromise, pursuant to G.L.c. 204, §15. Therefore, Macht’s claims against Murphy can only survive if she establishes that she and Murphy entered into a valid and enforceable mutual agreement at common law.
In Massachusetts, before a will is allowed, an executor of the will and all of the interested parties who are of legal competence, and whose interests under the will may be affected, may enter into an agreement with regard to the property disposed of in the will. Price, 348 Mass, at 663; Budin, 343 Mass, at 649; MacDonald, 327 Mass, at 739. If this court assumed that Murphy and Macht’s stray remarks in August of2003, regarding Dobkin’s property were sufficient to constitute an agreement, that agreement would only be enforceable, if at the time it was entered into, (1) Macht was an “interested party” to the Will, (2) all other interested parties who would take under the 1984 Will were parties to the agreement, or had their interests represented, and (3) Murphy was aware that the Will was in existence, and could properly compromise any of the claims contained in it. Id. Macht’s claims fail as a matter of law because she does not establish these critical elements.
First, Macht is not an “interested party” because she was not named as a beneficiary under the 1984 Will, and is not an heir at law of Karen Dobkin. McDonald, 377 Mass. at 742; Ellis v. Hunt, 228 Mass. 39,43-44 (1917) (will, agreement or compromise must be entered into by the beneficiaries under a will, heirs at law, competent legatees, and devisees, as to what they may receive under the will). See also Conley v. Fenelan, 266 Mass. 340, 344 (1929) (recognizing that heirs at law or legatees are the only “persons interested” who can challenge a will). Therefore, Macht was not a party who could enter into a contract regarding the disposition of the Estate of Dobkin’s property. Furthermore, any alleged agreement entered into by Macht and Murphy would be invalid because Dobkin’s niece and nephew, named in Articles II and III of the 1984 Will, were “interested persons,” because they would gain property under the will if Macht disclaimed her interest or predeceased Dobkin, and were not parties to the alleged agreement. See Budin, 343 Mass, at 649 (parties may settle their differences by mutual agreement, without the aid of G.L.c. 204, §15, only where “all interested parties are of legal competence and no unrepresented interests would be affected”).
Additionally, Macht admits that at the time that she and Murphy entered into this alleged agreement, Murphy had no knowledge that the 1984 Will even existed, and only knew of the unexecuted 2003 Will. Murphy could not, therefore, enter into an agreement to compromise the 1984 Will whose terms she was wholly unaware of. See Ellis, 228 Mass, at 43 (a will agreement is a change made by the legatees or devisees to the disposition to be made “of the interests granted by the will”). Nor could Murphy enter into an agreement as to the only will that she was then aware of, the unexecuted 2003 Will, because it would never be allowed at probate. See Parker v. New England Trust, 215 Mass. 226, 288 (1913). Thus, taking as true Macht’s version of the facts, any post-mortem agreement forged by her and Murphy regarding the distribution of property under the 1984 Will, as a matter of law, would have no legal effect. See Baxter v. Treasurer Receiver General, 209 Mass. 459, 463 (1911). The remarks between Murphy and Macht are, in essence, nothing more than an unenforceable promise to make a gift. See e.g., Congregation Kadimah Toras-Moshe v. DeLeo, 405 Mass. 365, 366-68 (1989) (oral promise to make a gift was not an enforceable contract).
Macht’s alternative argument is that the alleged agreement should be given effect because it reflects Dobkin’s true testamentary intent that Macht, and not Murphy, be the primary beneficiary of her estate. For this reason, Macht’s counsel argues that summary judgment would not be warranted on this claim until *321 he can obtain additional discoveiy that documents Dobkin’s testamentary wishes, and confirm that she had no intention of leaving anything to her sister. See Mass.R.Civ.P. 56(f). Both arguments, however, ignore the well-established precedent that the rights under will agreements are wholly contractual and not testamentary, and may even be contrary to the testator’s intent. Budin, 343 Mass, at 649. A will compromise is a reflection of the volition of the parties to the agreement, not of the will or intent of the testator. Ellis 228 Mass, at 43. The additional discoveiy that the plaintiff seeks would, hence, be fruitless to her claims because testamentary intent is irrelevant to finding a valid enforceable agreement to compromise a will. Id.
For these reasons, summary judgment should enter in favor of Rosarme Murphy, and the Estate, on Counts I and V of the plaintiffs complaint.
B. Macht's Claims Against Attorneys Aarons and Stern
In her complaint, Macht alleges that Dobkin engaged attorneys Aarons and Stern to draft a new Will that made Macht the principal beneficiary, and that both attorneys breached the terms of their engagement by failing to ensure that the 2003 Will was executed. Macht claims that she was an intended third-party beneficiary of that engagement, and as such, has the right to bring a claim for the attorneys breach of that agreement, breach of fiduciary duty, and professional malpractice. The defendants argue that even if Macht could prove that a contract existed to provide legal services for the creation of the 2003 unexecuted Will, Macht could not be an intended beneficiary of that agreement, and has no right to enforce it, or sue for an alleged breach of its terms. Miller v. Mooney, 431 Mass. 57, 62-63 (2000). To recover as a third-party beneficiary, Macht must show that Dobkin and the attorneys “intended to give her the benefit of the promised performance.” Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366 (1997). Massachusetts has adopted Restatement (Second) of Contracts 302 (1981) and “limit(s) enforcement by beneficiaries to those who are intended beneficiaries.” Miller, 431 Mass, at 62. For a party to be designated an intended beneficiary, it “must appear from” the language and circumstances of the contract that the parties to the contract “clearly and definitely intended the beneficiaries to benefit from the promised performance.” Id. quoting Anderson, 424 Mass, at 366-67.
Macht cannot be an intended beneficiary of the engagement between Aarons, Stem, and Dobkin because in preparing an estate plan or will, the attorneys can “have only one client to whom they owe a duty of undivided loyalty.” Id. at 62, citing Summons v. O’Keeffe, 419 Mass. 288, 300 (1995). That client is the testator Karen Dobkin. Id. Macht could only be an incidental beneficiary with no enforceable rights to that agreement or engagement. Miller, 431 Mass. at 62 (reasoning that even if the plaintiff could point to a contract where the testator required her attorney to draft a particular will, naming the plaintiff as a bene-ficiaiy, the plaintiff would have no right to enforce that agreement), citing Spinner v. Nutt, 417 Mass. 549, 556 (1994) (plaintiffs could not rely on their status as trust beneficiaries to show that they were intended beneficiaries of the contract between the defendants and the trustees).
Attorneys have only been held liable to intended beneficiaries of an estate for a breach of fiduciary duty where the lawyer’s drafting errors in the will or trust instruments thwarts the intent of the testator, and if there is no conflict between the duties the attorney owes to the decedent and intended beneficiaries. Spinner, 417 Mass, at 554, citing Logotheti v. Gordon, 414 Mass. 308, 311 (1993). A claim is recognized in that limited circumstance of a drafting error only where all the beneficiaries, as would the testator, want the same result of allowing the will, and none are challenging the distribution under the will, and the claim arises only from the attorney’s drafting or technical error. The determinative inquiiy is whether the potential for conflict exists. Miller v. Mooney. 431 Mass. 57, 63 (2000). In those cases, where all the beneficiaries and the testator have the same interests, courts reason that there is no potential conflict between the duly an attorney owes the client and to the intended beneficiaries. Logotheti, 414 Mass, at 311. This case does not fall within that limited circumstance because at its core is the dispute between the beneficiaries of the estate named in the executed Will, and the self-proclaimed intended beneficiary, Macht, who are at odds over the distribution of the estate. To hold that in these circumstances the defendant attorneys owed a duly to Macht, a party with a financial interest in the unexe-cuted Will, and a duty to the testator, Dobkin, would be to impermissibly impose potential conflicting duties on Stern and Aarons. Miller, 431 Mass, at 64 (attorney’s duty to beneficiary cannot coexist with attorney’s duty of undivided loyalty to the client testator where the former creates an incentive to exert pressure on a client to complete and execute estate planning documents and could contravene the attorney’s primary responsibility to effectuate the client’s wishes); Logotheti, 414 Mass, at 311; Spinner, 417 Mass, at 554.
In the alternative, Macht’s counsel also argues that summary judgment would not be warranted on the claims against Stern and Aaron until he can obtain additional discovery and elicit facts on which a jury could find that a third-party beneficiary contract existed between them. See Mass.RCiv.P. 56(f). This argument fails because there are no grounds, as a matter of law, on which Macht could bring her claims against attorneys Stem and Aarons as a third-party beneficiary of the attorneys engagement to Dobkin. Miller, 431 Mass, at 63 (reasoning that, even if a *322 plaintiff could point to a contract requiring an attorney to draft a particular will naming the plaintiff as a beneficiary, the “plaintiff could not obtain enforcement where there was no writing to remove the agreement from the statute of frauds”). See also Shopneck v. Rosenbloom, 326 Mass. 81, 83-84 (1950) (oral contract to make will unenforceable as violative of Statute of Frauds, G.L.c. 259, §5A).
Macht’s claim that attorney Aarons and Stem breached their fiduciary duty and malpractice claim also fails as a matter of law. When asserting a claim for legal malpractice, “a plaintiff bears the burden of proving that its attorney committed a breach of the duty to use reasonable care, that the plaintiff suffered actual loss, and that the attorney’s negligence proximately caused such loss.” Atlas Tack Corp. v. Donabed, 47 Mass.App.Ct. 221, 226 (1999). It is undisputed that Macht had no attorney-client relationship with attorneys Sterns and Aarons. For there to be liability, in the absence of an attorney-client relationship, Macht must establish that the attorneys owed her a duty of care. Miller, 431 Mass, at 61. However, it is well settled that a court “will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client.” Id.; See Lomare v. Basbanes, 418 Mass. 274, 276 (1994). The duty of those attorneys who prepared the Will and estate plan is undivided and runs only to Dobkin, the testator, and cannot coexist with any duty to Macht. Symmons, 419 Mass. at 300. In the absence of a duty to Macht, there are no grounds on which she could support her professional malpractice and breach of fiduciary duty claims against attorneys Stem and Aarons. See Logotheti, 414 Mass. at 311-12; Miller, 431 Mass, at 60-61.[5]
For these reasons, summary judgment should appropriately enter in favor of the defendants Stems and Aarons on Counts II, III, IV, and IV of Macht’s complaint.

ORDER

For the foregoing reasons, the motions for summary judgment brought forth by the defendants are ALLOWED, and it is hereby ORDERED that the plaintiffs Complaint be DISMISSED with prejudice.

In her cover letter, attorney Aarons specifically stated that “[T]o avoid any future issues or complications, please be sure that you have a notary public with a valid commission in the Commonwealth of Massachusetts, and two witnesses.” It further instructed that the parties could contact attorney Aarons with any questions, or if the will did not reflect Dobkin’s wishes.

It is undisputed that the 2003 Will is invalid and unenforceable because it was never executed or probated. G.L.c. 191, §7.

G.L.c. 204, §15, provides: “The Supreme Judicial Court or the probate court may authorize the persons named as executors in an instrument purporting to be the last will of a person deceased, or the petitioners for administration with such will annexed, to adjust by arbitration or compromise any controversy between the persons who claim as devisees or legatees under such a will and the persons entitled to the estate of the deceased under the laws regulating the descent and distribution of intestate estates, to which arbitration or compromise the persons named as executors, or the petitioners for administration with the will annexed, as the case may be, those claiming as devisees or legatees whose interests will in the opinion of the court be affected by the proposed arbitration or compromise, and those claiming the estate as intestate shall be parties.”

Even if Macht could demonstrate the existence of a duty of care owed to her by attorneys Aarons and Stems, which she has failed to demonstrate in the summary judgment record, she would be unable to establish the necessary causation to support her malpractice claim. To establish the causal connection between the harm she complains of and the alleged malpractice of both attorneys, Macht must show that the errors committed by counsel, either alone or together, more likely than not was the reason why the matter turned out as it did. See Atlas Tack Corp. v. Donabed, 47 Mass.App.Ct. 221, 226 (1999). It is undisputed in the record supported by the affidavits and deposition testimony and affidavits of physicians and psychologists, as well the deposition of the plaintiffs friend Carol Rissman, that on August 6, 2003, Dobkin was unresponsive, uncommunicative, and nearly unconscious, all which suggest that she lacked the capacity to execute the Will, even if someone was going to sign on her behalf. G.L.c. 191, §1; See e.g., Duchesneau v. Jaskoviak, 360 Mass 730, 732-34 (1972) (eighty-year-old man lacked testamentary capacity when he signed an instrument alleged to be his last will and testamentary capacity his condition, as witnessed by his physician, was that of senility and confusion).