SUPERIOR COURT 
 
 JOSEPH REILLY, STEVEN WENNERS, TERRY PAULSEN, JOANNE LAULETTA and JACKIE KEITH v. LANE, LANE & KELLY LLP, DAVID B. LANE, NINA MARTIN et a/.[1] @MEMORANDUM OF DECISION AND ORDER ON LANE DEFENDANTS' MOTION TO DISMISS

 
 Docket:
 2484CV03250-C
 
 
 Dates:
 September 21, 2025
 
 
 Present:
 Robert B. Gordon
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON LANE DEFENDANTS' MOTION TO DISMISS
 
 

             Plaintiffs are the would-be but disappointed_ beneficiaries of a draft unexecuted Last Will and Testament (the "Will") of testator Lynne Millican ("Millican'') that Defendants Lane, Lane & Kelly ("Lane" or the "Law Finn"), Attorney David B. Lane, and Paralegal Nina Martin (collectively the "Lane Defendants"), were in the process of preparing for Millican at the time of her death. Millican had engaged Lane in late May, 2024 to draft revisions to her 2021 Will that would have substituted the Plaintiffs for that instrument's then-designated beneficiaries. Unfortunately, Millican passed away in early July, 2024, before the Lane Defendants could finalize the revised estate documents for her execution. Although the draft Will that Millican was
 
--------------------------------------------
 
[1] Helen McCluskey, Robert McCluskey, Barbara Jean Moreau, Steven Moreau, Alan (Bim) McNeil, Barbara Tripp, Joseph Tripp, Robert Hamilton, Fabrien Rosen, Beth Ann Luter, Wounded Warrior Project, Trustees of Tufts College, Massachusetts Society for the Prevention of Cruelty to Animals, Joanne Weloskc, Lucy Anderberg, Sam · McCluskey, and Kiersien Anderberg.
 
                                                            -1-
 
reviewing with her lawyers shortly prior to her untimely death is now purported by the Plaintiffs to reflect her final testamentary intentions regarding the designation of beneficiaries, that instrument was never signed by Millican in the presence of witnesses and was thus not submitted to probate by the Lane Defendants,
            Plaintiffs have brought an eight-count Complaint, by which they seek to hold the Lane Defendants accountable for the failure to have secured their nomination as beneficiaries in a valid and functioning will of Millican. The Lane Defendants have filed a Motion to Dismiss the remaining seven counts of the Complaint asserted against them[2] pursuant to Mass. R. Civ. P. 12(b)(6), arguing that the allegations of the Complaint cannot sustain viable causes of action as a matter of law.
FACTS[3]
            Testator Lynne Millican engaged Lane to prepare her Will in late May, 2024. Millican was then suffering from a serious medical condition that would, in short time, take her life. So ailing, Millican desired to make substantial changes to her existing Will in order to substitute
Plaintiffs as the designated beneficiaries thereof. Millican was concerned about the precarious state of her health, and communicated to Lane a desire that her Will be amended promptly to reflect her changed testamentary intentions. (Compl. at paras. 30-32, 34-35.)
            On May 21, 2024, Lane transmitted an Engagement Letter to Millican under the signature of Attorney Lane. (Compl. at para; 36 and Ex. A.) The Engagement Letter detailed the scope of the Law Firm's representation of and services to Millican as follows:
--------------------------------------------
 
[2] Count I of the Complaint (Request for Instructions) has, by agreement of the parties, been amended to remove the Lane Defendants from its reach. Count I is now asserted exclusively against the individually named beneficiaries of Millican's probated 202 I Will. See Paper 44.
[3] The following facts arc drawn from the Plaintiffs Complaint and its attached exhibits, in accordance with Mass. R. Civ. P. I2(b)(6). See Rafferty v. Merck & Co., 479 Mass. 141, 147 (2018).
 
                                                            -2-
 
"a. Analysis of your existing Will with special attention to the dispositive provisions;
b. Review of the property owned by you, its fair market value, and the maimer in which title to such property is held;
c. Discussion with you how you wish to dispose of property that you own or control at the time of your death; and
d. Preparation of the documents necessary to accomplish your desired dispdsitions, such as a will and trust, as well as durable power of attorney, health care proxy and such other documents that may be required."
(Compl. at Ex. A.) The Engagement Letter identifies no other parties whom Lane represented, and recites no due dt1:tes or deadlines by which the Law Firm's work needed to be completed.
            The following day, May 22, 2024, Lane transmitted a letter to Millican, enclosing with it a draft set of estate plan docwnents. Although not denominated as an "addendum" to the Engagement Letter per se, or any sort of formal memorialization of the parties' agreement, the letter summarized what Attorney Lane understood to be Millican's bequest-related intentions (which he endeavored to capture in the accompanying draft Will). (Compl. at para. 37, Ex. B.)
            At the conclusion of this letter, Attorney Lane conveyed the following caveat:
"The above is only a synopsis of the contents of the documents listed. We have highlighted the pertinent information for your review. The contents of  this letter are intended solely to assist you in understanding the major terms and conditions of your estate plan documents.
We are sending these documents to you solely for the purpose of review, as they arc in draft form only and arc not legally binding until they have been signed and witnessed at the office of Lane, Lane & Kelly, LLP.
If you have any questions regarding the documents, would like to discuss these docwnents in more detail, or would like to make any revisions, please call my office to schedule
 
                                                            -3-
 
a time to discuss same. If you are ready to proceed with executing your estate plan, please call my office to schedule a signing appointment. I look forward to hearing from you."
(Compl. at Ex. B) (emphasis in original.)
            Although Plaintiffs allege that the Lane Defendants "had actual knowledge that Ms. Millican was extremely debilitated, immobile, and unable to travel to the Firm's office in Braintree" (Compl. at para. 38), the Complaint does not recite or advert to any actual conversation between Millican and her lawyers about where the execution of her estate plan documents would occur.[4]
            The Complaint does not allege the occurrence of any further communications between Millican and her lawyers during June, 2024; although a later email exchange between these parties makes reference to changes to the terms of the Will that Millican made during this time period.'(Compl. at Ex. D.) On July 1, 2024, however, Millican transmitted an email to Paralegal Martin in which she conveyed a more pressing desire to finalize the estate documents:
"Because of the potential risks, I've been putting off some medical testing (which I hope will result in major health improvements) until my Will is finalized. This week is not going so good, and if it deteriorates, I suspect I'll be in-patient for a lot longer period than recent visits and will have to have the testing. Could you give me a rough idea of when it would be possible to finalize? And I feel this is a stupid question, but if I should succumb during any testing, despite these correspondences and changes-in-works, the only Will that would 'rule' would be the old one ... correct?"
(Compl. at para. 43 and Ex. D.)
 
--------------------------------------------
 
[4] In their Opposition, Plaintiffs assert that the Complaint contains an allegation that "in an email dated June 4, 2024," the Lane Defendants "insisted that Ms. Millican personally appear at their office to sign her 2024 Will." Neither the Complaint nor the cited Exhibit C evidence such an insistence. The only even arguable suggestion to this effect appears in Attorney Lane's May 22 letter, in which he states that the draft Will would not become effective and legally binding until executed at his office. This cannot fairly be construed as a demand or "insistence" that Millican appear personally at the Law Firm as a condition to the finalization of the Will itself.
 
            `                                               -4-
 
            Paralegal Martin replied the next day (July 2) with the following emailed response:
"I'm so sorry to hear that you are sick again. So unfortunately, yes, if you pass away prior to signing the new Will then the old Will takes precedence. I have your revisions-on the top of my list. I will email you the changes after the attorney reviews the documents."
(Compl. at para. 44 and Ex. D.)
            Although the Complaint contains no explicit allegation(s) regarding the reason Millican's estate plan documents had not been finalized in the roughly one-:-month period since Lane's initial engagement, the foregoing exchange provides a few hints. For one, Millican registers no complaints or grievances to the effect that the Law Firm had been dilatory or unresponsive to her. Second, Millican notes that there had been "correspondences" between her and Lane, and that the Will was still subject to "changes-in-works."Third, Millican adverts to her "deteriorating" health and "in-patient" hospitalizations that may become longer in duration if her condition fails to improve as hoped. All of this (at least by reasonable implication) suggests that the reason Millican's Will was not finalized as of July 2, 2024 had more to do with the testator's health and to changes in the instrument she was implementing than to unresponsiveness or negligence on the part of the Law Finn.
            Millican replied to Paralegal Martin with an expression of a more urgent desire to finalize her estate documents before her health took a turn for the worse:
"Even tho [sic] I figured it to be true, still scary news. I'm on my way in to Faulkner within the hour, and if admitted, which I presume, I won't have any access to my email ... Please call or text my cell with any updates or questions This is really kind of scary, because if anything should happen I would NOT want my previous will to be enacted, and as I double over in pain I'm not seeing any solves here."[5]
 
--------------------------------------------
 
[5] The Complaint (at para. 48) once again alleges that Paralegal Martin "wrote Lynne advising that she needed to have the Will executed at L&L's office; but the writing that paragraph 48 cites to support this allegation asserts no
 
                                                            -5-
 
(Compl. at Ex. D.)
            The Complaint asserts that, "despite knowing of Millican's condition," the Lane Defendants "did not offer to send two witnesses to the hospital (a short distance from the Firm's office), did not advise her about a death-bed will, and did not advise Lynne to sign the Will in whatever state it was in and amend it later to overcome Lynne's apprehension and strongly expressed desire to eliminate her prior beneficiaries.''(Compl. at para. 51.)
            The Complaint contains no allegations of any further communications (of any kind) between Millican and the Lane Defendants after July 2, 2024. Nor does the Complaint allege that Millican conveyed further urgency about finalizing the Will during this window, or that the
parties ever agreed about any particular turn-around time for the estate documents. So far as the Complaint reflects, Paralegal Martin stated just before the 4th of July holiday that she would prioritize this project and obtain Attorney Lane's review and sign-off on Millican's suggested revisions promptly. Millican, however, passed away on July 7, 2024, a mere two business days· after her last communication with Lane. Millican's death occurred before the draft Will could be attorney-reviewed, finalized and executed.
DISCUSSION
I. LEGAL STANDARD
            To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint must allege facts "plausibly suggesting ... entitlement to relief[.]" Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly. 550 U.S. 544, 557 (2007). Detailed
 
--------------------------------------------
 
such thing. The Complaint (para. 49) then repeats this same allegation, stating that, by her email to Millican, "Paralegal Martin erroneously created and reinforced the idea with Lynne that there was no way to supersede Lynn's previous Will without executing the new Will at  the  Firm's office." Once again, however, Paralegal  Martin's email to Millican says nothing to the effect that the only valid will is one executed at the Lane law offices. Paralegal Martin's email simply stated that, unless a new will were properly executed and witnessed, Millican's prior will would remain in effect.
 
                                                            -6-
 
factual allegations are not required, but the plaintiff must present more than mere "labels and . conclusions," such that the alleged facts "raise a right to relief above the speculative level." Iannacchino, 451 Mass. at 636, quoting Twombly, 550 U.S. at 555. In determining whether a complaint meets this standard, the Court accepts the factual allegations in the pleading as true, and draws all reasonable inferences in favor of the non-moving plaintiff. Harrington v. Costello, 467 Mass. 720, 724 (2014).
            In considering a motion to dismiss, the Court is generally limited to the four comers of the complaint. There are, however, exceptions to this general rule. The Court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" without converting the motion to one for summary judgment. Reliance Ins. Co. v. Boston, 71 Mass. App. Ct. 550, 555 (2008), quoting Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). The Court may also consider documents not attached to the Complaint, but upon which the Plaintiff relied in framing the claims therein. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).
II. PLAINTIFFS' CLAIMS
            Plaintiffs have brought a series of civil claims, each seeking to hold the Lane Defendants liable for the failure of decedent Millican's Will to designate them beneficiaries of her estate as purportedly intended. More specifically, Plaintiffs allege that the failure of the Lane Defendants to ensure that Millican's draft Will - revised in June, 2024 to name them as beneficiaries - was signed and witnessed prior to the testator's death in July, 2024 violated duties owed to them under principles of Massachusetts contract and tort law. The Court does not agree, for the reasons which follow.
 
                                                            -7-
 
            A. BREACH OF CONTRACT
            Plaintiffs' claim for Breach of Contract in Count II of the Complaint posits that Plaintiffs, as named takers in the draft Will, were intended third-party beneficiaries of Millican's contract for legal services with the Lane Defendants. As such, Plaintiffs maintain that they have rights to enforce the Lane Defendants' purported breach of  that contract.[6]  Plaintiffs'  claim fails for each of two independently sufficient reasons.
            First, Massachusetts decisional law makes clear that, as merely would-be takers under a Will that was never finalized, witnessed and executed, Plaintiffs cannot qualify as intended third- party beneficiaries of the testator's contract for legal services with the drafters of that Will. The SJC first confronted this issue in the context of estate planning and representation in Miller v. Mooney, 431 Mass. 57 (2000), where the testator's children brought suit against their mother's
estate lawyer for alleged breaches of contract and legal malpractice surrounding the preparation of the mother's will. The plaintiff-children in Miller claimed that the retained lawyer had negligently failed to fulfill their mother's stated intention to have the will revised to make testamentary provision for them. Affirming the entry of summary judgment against this claim, the SJC made clear that even designated testamentary beneficiaries are not contractual third- party beneficiaries of an agreement to make a will:
"If the purpose of the contract were to provide legal services to [their mother], the plaintiffs could not be intended beneficiaries. In preparing an estate plan and distributing property, either through a will or through inter vivos trusts, attorneys can have only one client to whom they owe a duty of undivided loyalty. That client would have been [the mother].
 
--------------------------------------------
 
[6] Although only the Law Firm, and not either Attorney Lane or Paralegal Martin, can be considered proper parties- defendant to the contract for legal services with Millican, the Court (for the sake of simplicity) treats Plaintiffs' claim for breach of contract in Count II as asserted against all of the Lane Defendants. The contract claims against Defendants David B. Lane and Nina Martin as individuals, however, are properly dismissed for this additional reason.
 
                                                            -8-
 
The plaintiffs could only be incidental beneficiaries
with no enforceable contract rights under such a contract."
Id. at 62 (citation omitted). See also Spinner v. Nutt, 417 Mass. 549, 556 (1994) (plaintiffs could not rely on their status as trust beneficiaries to show that they were intended beneficiaries of the contract between the lawyer-defendants and the client-trustees).
            Plaintiffs remonstrate that Miller's concern for the potential conflict of interest between testator client and putative beneficiary is not present in this case, because Millican made plain in her communications with the Lane Defendants that she wished to make Plaintiffs the objects of her Will's dispositions. Hence, no conflict. Plaintiffs, however, misapprehend the essential
teaching of Miller, as the unacknowledged and uncited reasoning of Miller itself makes clear. The Court wrote:
"We have previously noted that in preparing a will attorneys can have only one client to whom they owe a duty of undivided loyalty. A client who engages an attorney to prepare a will may set on a particular plan for distribution of her estate, as here. It is not uncommon, however, for a client to have a change of heart after reviewing a draft will. Confronting a last will and testament can produce complex psychological demands on a client that may require considerable periods of reflection. An attorney frequently prepares multiple drafts of a-will before the client is reconciled to the result. The most simple distribution provisions may be the most difficult for the client to accept. Considerable patience and compassion can be required of attorneys drafting wills, especially where the client seeks guidance through very private and sensitive matters. If a duty arose as to every prospective beneficiary mentioned by the client. the attorney-client relationship would become unduly burdened. Attorneys could find themselves in a quandry whenever the client had a change of mind, and the results would hasten to absurdity. The nature of the attorney-client relationship that arises from the drafting of a will necessitates against a duty arising in favor of prospective beneficiaries. Cf Logotheti v. Gordon, 414 Mass. 308,312 (1993) (duty
 
                                                            -9-
 
runs to testator, not to heirs at law)."
Miller, 431 Mass. at 63-64 (emphasis added).
            This Court has since applied the conflict-of-interest principle of Miller to reject the contract and tort claims of would-be beneficiaries of an unexecuted will against the lawyers who drafted the will (and understood the testator's intentions) but then failed to secure its execution. See Macht v. Estate of Dobkin, 19 Mass. L. Rptr. 318, 2005 WL 1156160 (Mass. Super. Ct. April 4, 2005 (Burnes, J.), affd, 66 Mass. App. Ct. 1117, 2006 WL 2019875 at *2 (2006) (Rule 1:28 Dec.). In Macht, the Court dismissed common law contract and tort claims brought against the defendant estate lawyer that closely parallel the claims that have been asserted against the Lane Defendants in the case at bar. Relying upon the holding in Miller, Judge Burnes wrote:
"Macht cannot be an intended beneficiary of the engagement between Aarons, Stern and Dobkin because in preparing an estate plan or will, the attorney can have only one client to whom they owe a duty of undivided loyalty. Miller, [431 Mass. at] 62 . . . That client is the testator Karen Dobkin. Id. Macht would only be an incidental beneficiary, with no enforceable rights to that agreement or engagement. Miller, 431 Mass. at 62 (reasoning that even if the plaintiff could point to a contract where the testator required her attorney to draft a particular will, naming the plaintiff as a beneficiary, the  plaintiff would have no right to enforce that agreement) . . . "
Macht, supra at * 4.
            Amplifying her reasoning further, Judge Burnes rehearsed the conflict of interest principle at the heart of Miller in a manner that makes clear why Plaintiffs' clearly analogous claims in this case must fail. Judge Burnes wrote:
"Attorneys have only been held liable to intended beneficiaries of an estate ...  where the lawyer's drafting errors in the will or trust instruments thwarts the intent of the testator, and if there is no conflict between the duties the attorney owes to
 
                                                            -10-
 
the decedent and intended beneficiaries . . . A claim is recognized in that limited circumstance of a drafting error only where all the beneficiaries, as would the testator, want the same result of allowing the will, and none are challenging the distribution under the will, and the claim arises only from the attorney's drafting or technical error. The determinative inquiry is whether the potential for conflict exists. Miller v. Mooney. 431 Mass. 57, 63 (2000). In those cases, where all of the beneficiaries have the same interests, courts reason that there is no potential conflict between the duty an attorney owes the client and to the intended beneficiaries. This case does not fall within that limited exception because at its core is the dispute between the beneficiaries of the estate named in the executed Will, and the self-proclaimed intended beneficiary, Macht, who are at odds over the distribution of the estate. To hold that in these circumstances the defendant attorneys owed a duty to Macht. a party with a financial interest in the unexecuted Will, and a duty to the testator, Dobkin, would be to impermissibly impose potential conflicting duties on Stern and Aarons. Miller. 431 Mass. at 64 (attorney's duty to beneficiary cannot coexist with attorney's duty to the client testator where the former creates an incentive to exert pressure on a client to complete and execute estate planning documents and could contravene the attorney's primary responsibility to effectuate the client's wishes)."
Macht, supra at * 5 (emphasis added, citations omitted).
            Miller and Macht light the path to the only precedent-respecting result that can obtain in this case. As in Macht, the Lane Defendants arc not alleged to have made a scrivener's error or committed some other drafting glitch in estate documents where the interests of testator and all actual and potential beneficiaries fully align. To the contrary, and precisely as in Macht, the Lane Defendants are charged with failing to secure the interests of one set of beneficiaries not yet named in the Millican Will to the detriment of other potential beneficiaries who were named in the testator's then existing Will. Particularly where Millican's testamentary intentions were in an . acknowledged state of flux, and cannot be said to have been established with absolute certitude (for the very reasons explained in Miller, supra at 63-64), the Lane Defendants cannot be held
 
                                                            -11-
 
liable for failing to fulfill contractual duties to non-client third parties like the Plaintiffs. Plaintiffs' Breach of Contract claim must be dismissed for this reason alone. [7]
            Even if Plaintiffs somehow held a right as third-party beneficiaries to enforce the legal services engagement between Millican and the Lane Defendants, and they do not, the Complaint contains no allegations that would permit a reasonable inference of actionable breach. The most the Complaint alleges, generously construed, is that Millican engaged the Lane Defendants to redraft her estate documents and make changes to the beneficiaries designated therein. The Lane Defendants did so promptly. Millican was herself directing that revisions be made to this document well into June of 2024, and the parties neither discussed nor agreed upon a turnaround deadline for the documents to be finalized and executed. Where no completion date was provided for in the agreement, Plaintiffs' allegations are insufficient to "plausibly suggest" an entitlement to relief, because they do not include an identification of the specific contractual obligation claimed to have been breached. Iannacchino v. Ford Motor Co., 451 Mass. 623,626 (2008) ("The alleged facts and reasonable inferences "must be enough to raise a right to relief above the speculative level"). Even if there had been agreement as to when the estate documents needed to be finalized, however, there is no suggestion anywhere in the Complaint that the failure of execution occurred through a lapse on the part of the Law Firm. The very first expression of urgency from client to lawyers regarding completion of the estate documents occurred on or about July 2, 2024. At that time, Paralegal Martin promised to raise the project's priority level, and Millican voiced no concerns, claims of contract breach, or the like. Plaintiffs
 
--------------------------------------------
 
[7] Plaintiffs' alternative argument, advanced for the first time orally at hearing, suggests that Millican's communications with Paralegal Martin are properly construed as a "revocation" of her then-existing Will. Nothing in the Complaint, however, remotely suggests any intention on the part of Millican to revoke her extant estate instruments (as opposed to changing certain of their designated beneficiaries). The 1935 case upon which Plaintiffs rely, therefore, is inapposite. Even if Millican's emails to Paralegal Martin could somehow be stretched to constitute a valid revocation of her Will, however, that would merely leave Millican intestate. It would not operate to invest the Plaintiffs with the rights of third-party beneficiaries under a Will that was never properly executed.
 
                                                            -12-
 
now fault the Lane Defendants for failing to arrange for the Will to be executed and witnessed at the hospital where Millican was about to undergo her testing procedure, and/or for failing to have Millican sign an incomplete or otherwise defective Will with the idea of amending it after she emerged from this facility. But there is nothing in the Complaint to suggest that either party to the legal services contract appreciated the truly imminent gravity of Millican's condition,[8] and thus no discussion of such extraordinary measures ever took place. Unfortunately, Millican passed away just two business days later, before the Lane Defendants could review and finalize the documents and secure a witnessed execution of same. This obviously terrible timing was a twist of fate, and not a breach of contract.
            For each of these independently sufficient reasons - the absence of a duty owed to incidental (as opposed to intended) third-party beneficiaries, and a lack of proof of breach by the Lane Defendants - Plaintiffs' claim in Count II of the Complaint fails as a matter of law. The claim shall be dismissed.
            B. DECLARATORY JUDGMENT UNDER G.L. c. 190, § 2-516
            In Count III of the Complaint, Plaintiffs seek a declaratory judgment that the Lane Defendants violated G.L. c. 190B, § 2-516 by failing to submit Millican's unfinalized, unsigned and unwitnessed Will to an appropriate probate court. Plaintiffs' claim lacks merit on its face.
            The Complaint makes clear that the draft Will the Lane Defendants prepared in June, 2024 was never signed by its testator in the presence of two witnesses. These are strict requirements for a valid and functioning will per the dictates of G.L. c. 190, § 502. Without having satisfied these requirements, the draft Will is not valid and enforceable. Inasmuch as G.L.
 
--------------------------------------------
 
[8] Millican spoke of the possibility of her demise in strictly hypothetical terms. In her same email exchange with paralegal Martin, Millican expressed optimism that the testing procedure she was undergoing would bring "major improvements" to her health. (Comp!. at para. 43 and Ex. D.)
 
                                                            -13-
 
c. 190, § 2-516 calls upon persons having custody of"a will of the testator" to deliver it to probate, the Lane Defendants committed no violation of the statute in not submitting the invalid and unenforceable draft to probate. Any other reading of this law sews a species of chaos that could not possibly have been intended by the Legislature. Count III of the Complaint thus states no viable claim, and shall be dismissed.
            C. LEGAL MALPRACTICE AND NEGLIGENT SUPERVISION
            In Counts IV and V of the Complaint, Plaintiffs charge the Lane Defendants with professional negligence both in failing to secure their inclusion in the Millican Will prior the testator's death and, in this same connection, failing to provide adequate supervision to Paralegal Martin (Millican's primary point of contact at the Law Finn). For essentially the same reasons warranting dismissal of their contract claims, Plaintiffs' negligence claims fail as a matter of law.
            Counts IV and V of the Complaint rest upon the premise that the Lane Defendants owed the Plaintiffs a common law duty of care. The Complaint, however, makes clear that Plaintiffs and Defendants had no attorney-client relationship. Nor could they have had one, given the· potential for conflicts of interest inherent in the circumstances that obtained. See supra. As the SJC declared in Miller:
"The plaintiffs do not assert the existence of an attorney- client relationship with the defendant [lawyer] . . . In the absence of proof of an attorney-client relationship, the judge correctly concluded that there was no duty of care owed by the defendant to the plaintiffs with respect to their claim of legal malpractice."·
Miller, 431 Mass. at 61. Accord Lamare v. Basbanes, 418 Mass. 274,276 (1994) (testator's attorney owed no duty to beneficiaries of a trust where imposition of such duty "could impermissibly interfere with attorney's task of advising the trustee"). See also Bartle v. furry, 80 Mass. App. Ct. 372,378 (2011) ("[T]he court will not impose a duty of reasonable care on an
 
                                                            -14-
 
attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client."); Macht, supra at* 6 ("For there to be [malpractice] liability, in the absence of an attorney-client relationship, Macht must establish that the attorneys owed her a duty of care. However, it is well settled that a court will not impose a duty of reasonable care on an attorney if such an independent duty could potentially conflict with the duty the attorney owes to his or her client. The duty of these attorneys who prepared the Will and estate plan is undivided and runs only to Dobkin, the testator, and cannot coexist with any duty to Macht.") (dismissing legal malpractice and fiduciary breach claims).
            There being no duty of care owed by the Lane Defendants to the Plaintiffs as a matter of law,[9] an essential element of the professional negligence claims asserted in Counts IV and V of the Complaint is lacking. These claims, therefore, shall be dismissed.
            D. GENERAL LAWS c. 93A
            In Count VI of the Complaint, Plaintiffs assert claims against the Lane Defendants for "intentional and deceptive conduct" toward Millican that operated to deprive them of the testamentary bequests to which they believe they are entitled. Such conduct is alleged to constitute unfair and deceptive business practices, in violation of G.L. c. 93A. The Court does not agree.
 
--------------------------------------------
 
[9] The Court would further note that. even if such a duty had been owed to Plaintiffs, it is dubious that the allegations in the Complaint make out viable claims of legal malpractice against the Lane Defendants. The Lane Defendants were engaged to revise a Will, and they were in the process of doing so. There is no allegation that they performed below the standard of professional care in either what they did or the amount of time they took to do it. Millican was communicating with them about final changes to the Will, and acknowledging the need for Attorney Lane to review those changes, just two business days before this testator died. It is not legal malpractice for the Lane Defendants to have failed to foresee the imminence of their client's demise, and then arranged for the in-hospital execution and witnessing of a Will that was still in process. The law requires lawyers and their staff to be competent, not clairvoyant.
 
                                                            -15-
 
            As an initial matter, the factual allegations of the Complaint assert no more than simple negligence against the Lane Defendants. Shorn of its rhetorical label, Count VI puts forward nothing that could fairly be considered "intentional and deceptive conduct."[10] This deficit alone constitutes sufficient reason for dismissing Plaintiffs' Chapter 93A claim. See H-1 Lincoln, Inc. v. S. Washington St., LLC. 489 Mass. 1, 17 (2004) (negligence and breaches of contract not accompanied by other unfair and deceptive conduct will not support Chapter 93A claim).
            Further to the above, the SJC in Miller expressly rejected the Chapter 93A claim brought by children/would-be beneficiaries against the lawyer who failed to draft a will effecting what they asserted to have been their mother's testamentary intentions. Because the children "were neither her clients nor were they acting on behalf of a client," the lawyer "was not engaged in trade or commerce with the plaintiffs within the meaning of G.L. c. 93A." Miller, 431 Mass. at 64-65 (affirming dismissal of Chapter 93A claim).[11]
            E. UNAUTHORIZED PRACTICE OF LAW
            In Count VII of the Complaint, Plaintiffs accuse Paralegal Martin, a paraprofessional employed by Lane, of engaging in the unauthorized practice of law (viz., the giving of inaccurate or incomplete legal advice) in her dealings with Millican. Plaintiffs thus assert a violation of G.L. c. 221, § 46A. To the extent this claim simply represents a species of alleged professional
 
--------------------------------------------
 
[10] The lone "misstatement" that the Lane Defendants are alleged to have made is a stray reference in a single letter from Attorney Lane to Millican, suggesting that her revised Will needed to be signed and witnessed at the Law Firm. This was, at the very most, a careless turn of phrase. It was not, reasonably construed, an intentional deception, and it caused no discernible harm in this instance. After all, the Will was never even reviewed by Attorney Lane during the two-day window between Millican's communication with Paralegal Martin and her death. The supposedly prescribed site of the instrument's signing and witnessing had little (if anything) to do with its non- execution during that brief window of time.
[11] Plaintiffs' insistence that the Lane Defendants were acting "in a business context" with Millican, their client, is certainly true but of no legal significance. These Defendants were plainly not so engaged with the Plaintiffs, as Miller holds.
 
                                                            -16-
 
negligence and malpractice, the claim states no viable cause of action for all the reasons previously stated in respect to Counts IV and V of the Complaint. See supra.
            To the extent Count VII would assert an independent claim against the Lane Defendants based on Paralegal Martin's purportedly unauthorized practice of law, in violation of G.L. c. 221, § 46A, no private right of action runs in favor of the Plaintiffs under this statute. Section 46A does provide, in relevant part, that "(n]o individual, other than a member in good standing of the bar of this commonwealth, shall practice law." However, the immediately adjacent provision of this statute, G.L. c. 221, § 46B, confers exclusive standing upon a defined set of parties who may address alleged violations of Section 46A. These parties are: (I) bar associations, (ii) members of the bar, (iii) district attorneys, and (iv) the attorney general. Under the well-settled inclusio unius doctrine, [12] the statute's omission of private non-lawyers from the specification of those parties invested with standing to enforce Section 46A means that no such persons (like the Plaintiffs) enjoy standing to sue. See Real Estate Bar Ass'n for Massachusetts v. National Real Estate Info. Servs., 459 Mass. 512,515 n.5 (2011) (Section 46B "confers standing to bring suit regarding alleged violations on bar associations, members of the bar, district attorneys, and the Attorney General").
            The Court additionally notes that Plaintiffs have not responded substantively to the Lane Defendants' lack of standing argument in their Rule 56 filings. Any such opposition now waived, the Court concludes that Count VII of the Complaint shall be dismissed for this reason as well.
 
--------------------------------------------
 
[12] Under this canon of statutory construction, "statutory expression of one thing is an implied exclusion of other things omitted from the statute." Miles-Mathias v. Zoning Bd. of Appeals of Seekonk, 84 Mass. App. Ct. 778, 781 (2014).
 
                                                            -17-
 
            F. INTERFERENCE WITH ESTATE PLANNING
            In Count VIII of the Complaint, Plaintiffs allege that the Lane Defendants "intentionally and/or negligently interfered with Ms. Millican's desire to revise her 2021 Will by failing to make arrangements so that she could finalize her will while in the hospital." Plaintiffs allege that such conduct amounted to an "interference with Ms. Millican's estate planning," an interference
that operated to deny them the testamentary bequests that Millican intended and that they had reason to expect.
            The Court will not dwell over-long on this claim. A claim for tortious interference with the expectancy of receiving a gift requires proof that (I) the defendant intentionally and unlawfully interfered with (such as through "duress, fraud or undue influence") the plaintiff's expectancy of receiving a gift; and (2) the plaintiff had a "legally protected interest" in the gift. See Sacks v. Dissinger, 488 Mass. 780, 786 (2021); Labonte v. Giordano, 426 Mass. 319, 320-21 (1997). The allegations in the Complaint fail to make out either element of the claim.
            First, Plaintiffs were never more than potential beneficiaries in a draft Will, included in such provisional instrument pursuant to the unfettered discretion of a testator. They were not entitled to inclusion in the Will pursuant to any contract, enforceable promise, or by reason of any detrimental reliance they suffered based on the professed expectancy. See supra. The Complaint thus permits no reasonable inference that the Plaintiffs had a "legally protected interest" in a gift or bequest in this case. See Birkenfeld v. Birkenfeld, 102 Mass. App. Ct. 1118, 2023 WL 3133463 at *2 (2023) (Rule 23 Decision) (dismissal of interference claim warranted where language of trust agreement is clear about beneficiaries and plaintiff is not one of them; thus, plaintiff could not plausibly allege a "legally protected interest"). See also Sacks, 488 Mass. at 786.
 
                                                            -18-
 
            Second, and more critically, the allegations of the Complaint reflect no suggestion whatsoever that the Defendants engaged in purposeful conduct such as "duress, fraud or undue influence." The very most that the Complaint alleges is that Attorney Lane's May 22, 2024 letter to Millican contained a single phrase that could be construed as a misstatement that her Will needed to be signed and witnessed at the Law Firm (as opposed to anywhere else). Even construing this isolated statement as a misrepresentation of Massachusetts law,[13] the unadorned fact of the statement's making does not remotely constitute "fraud" for pleading purposes. See Mass. R. Civ. P, 9(b) ("In all averments of fraud, mistake, duress or undue influence, the circumstances constituting [same] shall be stated with particularity.''); Berliner v. Lotus Corp., 783 F. Supp. 708, 711 (D. Mass. 1992) ("A conclusory allegation, without supporting facts, is insufficient to support a claim of fraud."). This essential element of tortious interference is plainly lacking, rendering Plaintiffs' claim in Count VIII of the Complaint properly dismissed.[14]
CONCLUSION AND ORDER
            For all the foregoing reasons, the Lane Defendants' Motion to Dismiss shall be, and hereby is, ALLOWED. Counts II through VIII of the Complaint, therefore, are DISMISSED.
SO ORDERED.
 
--------------------------------------------
 
[13] And this is hardly the most reasonable construction of the statement. The more natural interpretation of Attorney Lane's statement is that the Will needed to be signed in the presence of witnesses before it could be considered valid, and that this ordinarily occurs at the offices of the law firm that prepared the instrument. Lawyers do not typically make house-calls in these circumstances; and deputizing law firm employees to serve as witnesses to the will's execution ensures both their disinterestedness and their future availability to the estate's lawyers should a challenge to the instrument be made in probate. That said, the Court recognizes that the inartfully drafted sentence in Attorney Lane's letter might be read to suggest not only that the Will needed to be signed and witnessed, but that this event was required (for some unspecified legal reason) to occur at the Law Firm's offices. For purposes of evaluating the Defendants' Rule 12(b) motion, the Court has construed the letter in this curious but Plaintiffs- favoring manner.
[14] To the extent that Plaintiffs would press a tortious interference claim based on negligence, the claim fails because the Lane Defendants owed no professional duty to them. See supra.
 
                                                            -19-
 
/s/Robert B. Gordon
Justice of the Superior Court
Dated:
September 21, 2025